756 So.2d 4 (1999)
Laverl JOHNSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00293-COA.
Court of Appeals of Mississippi.
April 6, 1999.
*6 Thomas H. Pearson, Ann R. Phillips, Clarksdale, Attorneys for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, P.J., DIAZ, AND KING, JJ.
DIAZ, J., for the Court:
¶ 1. Laverl Johnson appeals the decision of the Coahoma County Circuit Court finding him guilty of discharging a shotgun into the dwelling house of Pearlie Mae Williams in violation of Mississippi Code Annotated Section 97-37-29 (Rev.1994). Johnson asserts the following issues in this appeal: (1) whether he was prohibited from presenting a proper and meaningful defense when the court prohibited him from cross-examining the State's main witness on her admitted biases against him, as well as, when it prohibited him from presenting evidence that the identity of the perpetrator was someone other than himself, (2) whether the court allowed grossly prejudicial evidence of his previous conviction into evidence for an improper purpose and when it was not properly authenticated, (3) whether the evidence presented at trial was sufficient to establish the crime of shooting into an occupied dwelling and whether the jury's verdict was against the overwhelming weight of the evidence, and (4) whether he was denied his constitutional right to a speedy trial by the State. Finding error, we reverse.

FACTS
¶ 2. On October 14, 1994, Pearlie Williams and her daughter, Norma Rae Williams Johnson, were sleeping in the living room of Williams's home in Coahoma County when a shotgun blast came through the living room window. Another shot was fired through one of the bedroom windows. Fortunately, no one was injured.
¶ 3. Williams was the only person who claimed to have seen Johnson at the scene of the crime. She stated that she recognized Johnson's burgundy Ford Escort wagon as the one parked in her carport and that he left in that car after he shot into her home. Johnson claimed that he had a flat tire and engine problems that rendered the car inoperable. Although Norma Rae Johnson signed an affidavit the next day corroborating her mother's *7 story, she later recanted and claimed that her mother made her sign it. Instead, she stated that she called and talked to Johnson at his aunt's house fifteen minutes after the incident from a neighbor's house. Johnson states in his brief, and the transcript reflects, that there was animosity from Williams towards Johnson and that he was not welcome to stay in her home.
¶ 4. Johnson also claimed, and Williams admitted, that she approached his attorney, Thomas Pearson, before the trial in order to borrow money from him. Pearson flatly refused her request, but he believed that Williams was offering to sell her testimony. The judge precluded Johnson from presenting to the jury any evidence of Williams's bias and prejudice.
¶ 5. Johnson was found guilty of shooting into a dwelling and sentenced to serve a term of ten years in the Mississippi Department of Corrections. Feeling aggrieved, Johnson perfected this appeal.

DISCUSSION

I. THE COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO ALLOW QUESTIONS OF THE STATE'S WITNESS SHOWING THAT SHE WAS BIASED AGAINST JOHNSON
¶ 6. Mississippi Rule of Evidence 616 states that:
For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible.
¶ 7. Rule 616 must be interpreted as it relates to other rules of evidence, such as M.R.E. 104, 401, and 402. The general rule of admissibility of evidence under Rule 616 is subject to the trial judge finding, in his exercise of discretion under M.R.E. 104, that evidence is relevant, under M.R.E. 401 and 402, to the specific facts of the case. Tillis v. State, 661 So.2d 1139, 1142 (Miss.1995).
¶ 8. Parties may liberally cross-examine proffered witnesses regarding bias and interest. Thompson Machinery Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). The scope of cross-examination is ordinarily broad. Banks v. State, 631 So.2d 748, 750 (Miss.1994). However, the extent of cross-examination lies within the sound discretion of the trial court, but its ruling will be reversed when an abuse of that discretion is shown. McElroy, Mississippi Evidence, § 183, pp. 514-15 (1955). "The right to confront and cross-examine the witnesses against him is one guaranteed to all defendants under the Sixth Amendment of the United States Constitution and Article 3, Section 26 of the Mississippi Constitution." Shaffer v. State, 740 So.2d 273, 281 (Miss.1998)(emphasizing language of both constitutions that in all criminal prosecutions, accused shall enjoy right to be confronted with witnesses against him).
¶ 9. During the defendant's cross-examination of Williams, the following exchange took place:
Q. Ms. Williams, is it or is it not a fact that you called me up about two weeks ago?
A. I sure did.
Q. And is it or is it not a fact that you attempted to borrow money from me at that time?
BY MR. WEINBERG: Your Honor.
A. Yes.
BY MR. WEINBERG: What in the world could this possibly have to do with this case, and how can he do that without going into chambers first, as required by the rules?
BY THE COURT: I don't know. Are you going to connect it up to something?
BY MR. WEINBERG: May we be heard at the bench on that before he tries to, Your Honor, in front of this jury?
BY THE COURT: All right. Let's see where you're trying to go.
(CONFERENCE AT THE BENCH BETWEEN THE COURT AND *8 COUNSEL WITHOUT THE HEARING OF THE JURY AS FOLLOWS, TO WIT:)
BY THE COURT: Where are you going with this?
BY MR. PEARSON: It's going to show that I refused to loan her any money.
BY MR. WEINBERG: What does that have to do with this case, Judge? That's totally improper.
BY MR. PEARSON: Well, why wouldwhy was she calling me?
BY MR. WEINBERG: Well, until you know, you shouldn't bring it out in front of this jury.
BY THE COURT: Y'all don't speak too loud.
BY MR. PEARSON: Well, she might be bitter because I wouldn't loan her the money, I don't know.
BY MR. WEINBERG: That's outrageous.
BY THE COURT: Sustain the objection.
¶ 10. In this case, the judge's action in limiting Johnson's cross-examination of Williams during her testimony was an infringement of the rights of cross-examination and to confront witnesses. The proffered testimony was relevant to show the full story that Williams asked for a loan from Johnson's attorney and when denied, implicated that her testimony would be harmful to Johnson.
¶ 11. The court was wrong to limit Johnson in the extent of his development of Williams's bias and prejudice against him and his attorney. This assignment of error by Johnson is meritorious, and we hold it to be reversible error.

II. WHETHER THE COURT ALLOWED GROSSLY PREJUDICIAL EVIDENCE OF JOHNSON'S PREVIOUS CONVICTION INTO EVIDENCE FOR AN IMPROPER PURPOSE AND WHEN IT WAS NOT PROPERLY AUTHENTICATED
¶ 12. In order for evidence of prior convictions to be admissible under Mississippi Rule of Evidence 609, the State must first make a prima facie showing that "the conduct giving rise to the prior conviction ... bears upon the witness's propensity for truthfulness," before a prior conviction may be admitted to impeach under Rule 609. Tillman v. State, 606 So.2d 1103, 1107 (Miss.1992). Once the State has met its threshold burden of establishing prima facie that the defendant's prior conviction is relevant to his propensity for truthfulness, the trial court must make an on-the-record determination that this probative value outweighs the prejudicial effect of the prior conviction. Peterson v. State, 518 So.2d 632, 636 (Miss. 1987). The Peterson analysis entails an on-the-record balancing of the following five factors: (1) impeachment value of the prior offense; (2) date of the prior conviction; (3) similarity between the past and presently charged offenses; (4) importance of defendant's testimony; and (5) whether credibility is central. Peterson, 518 So.2d at 636. Additionally, there is a threshold requirement, even before the Peterson factors come into play, that the State prove that the prior offense has probative value on the issue of truthfulness. Bogard v. State, 624 So.2d 1313, 1316 (Miss.1993). However, because the trial court did not follow any of the steps required by Rule 609, we hold that the admission of Johnson's prior conviction was reversible error, and on remand the trial court must make an on-the-record Peterson analysis.

III. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE CRIME OF SHOOTING INTO AN OCCUPIED DWELLING AND WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE

A. Sufficiency of the Evidence
¶ 13. A challenge to the sufficiency of the evidence requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the *9 defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss.1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion for a directed verdict and JNOV. Id. If he concludes that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for directed verdict and JNOV; that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989). Of course, the opposite is also true. We may reverse the trial court's ruling only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 14. In the case sub judice, legally sufficient evidence existed to find Johnson guilty beyond a reasonable doubt. The State made out a prima facie case by showing that Johnson was identified as the person who left Williams's home and got in his car immediately after the shooting. Furthermore, several police officers testified who investigated the crime scene. Since the State put forth sufficient, credible evidence, the trial judge was required to leave the final decision of guilt or innocence to the jury. We affirm the trial judge's ruling with regard to the motion for a directed verdict.

B. Weight of the Evidence
¶ 15. The next motion we will review is that for a new trial. This goes to the weight of the evidence and not its sufficiency. In reviewing this claim, this Court must examine the trial judge's denial of Johnson's motion for a new trial. Jones v. State, 635 So.2d 884, 887 (Miss. 1994). The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice. May, 460 So.2d at 781. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State, 585 So.2d 693, 695 (Miss.1991). The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Id. Likewise, the reviewing court may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial. Id. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Johnson's motion for a new trial. Accordingly, we dismiss this assignment of error as lacking in merit.

IV. WHETHER JOHNSON WAS DENIED HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL BY THE STATE
¶ 16. Johnson also argues that he was denied his constitutional right to a speedy trial. However, he cites no legal authority in support of this assignment of error. The supreme court has repeatedly stated that it is the appellant's duty to provide authority in support of his claims of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997). Accordingly, Johnson's failure to cite authority for this issue precludes appellate review. Nevertheless, a review of the merits of this issue shows this assignment of error is without merit.
¶ 17. The Mississippi Code Annotated Section 99-17-1 (Rev.1994) provides the statutory right to a speedy trial:

*10 Indictments to be tried within 270 days of arraignment.
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two-hundred seventy (270) days after the accused has been arraigned.
Furthermore, the Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."
¶ 18. This Court analyzes a claim of a violation of the constitutional right to a speedy trial under the balancing test announced in Barker v. Wingo, 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four Barker factors are (1) the length of delay, (2) the reasons for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defense. Herring v. State, 691 So.2d 948, 955 (Miss.1997)(citing Barker, 407 U.S. at 529, 92 S.Ct. 2182). The Barker analysis turns on the facts of the particular case with no sole factor being dispositive. Taylor v. State, 672 So.2d 1246, 1258 (Miss. 1996).
¶ 19. The time period in question for purposes of constitutional analysis is that between initiation of prosecution and commencement of trial. Beavers v. State, 498 So.2d 788, 789-90 (Miss.1986), overruled on other grounds by State v. Ferguson, 576 So.2d 1252, 1255 (Miss. 1991). A delay in excess of eight months between arrest and trial establishes "presumptive prejudice" sufficient to trigger analysis under Barker. Skaggs v. State, 676 So.2d 897, 900 (Miss.1996).
¶ 20. On June 13, 1995, Johnson was indicted for shooting into an occupied dwelling. By this time, Johnson had left Mississippi to move to Wisconsin. On July 6, 1995, Johnson was located, and a governor's warrant was executed for his extradition to Mississippi. On August 3, 1995, the State was notified that Johnson was serving a six year term in Wisconsin. On December 11, 1996, Mississippi was notified that it could receive Johnson under temporary custody to stand trial on the indictment. Although he had counsel as late as December 13, 1995, `for this case, Johnson did not file a motion to dismiss for denial of a speedy trial until January of 1997.
¶ 21. The familiar Barker factors in the analysis of a speedy trial as applied to the case sub judice are as follows:

1. Length of Delay
The delay in the present case is a total of twenty-five and a half months. Under Skaggs, this delay is presumptively prejudicial. In Flores v. State, 574 So.2d 1314, 1322 (Miss.1990), the Mississippi Supreme Court held that if an extensive delay exists prior to trial, then that delay "must be weighed heavily in favor of [the defendant] in the balancing test." Id. However, the delay should "not [be] conclusively weighted against the State," because the presumption of a prejudicial delay may be rebutted when balanced by the remaining factors. Herring, 691 So.2d at 955. Here, this factor weighs in favor of Johnson.

2. Reasons for the Delay
The Mississippi Supreme Court has held that once the delay is found to be presumptively prejudicial, "the burden shifts to the prosecutor to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons." State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991). The State has shown that the overwhelming majority of the delay in this case was caused by Johnson. Johnson left Mississippi before he could be arrested and began serving a sentence in Wisconsin on an unrelated matter. Consequently, he was absent from the jurisdiction for nearly twenty-three months. Therefore, this factor weighs in favor of the State.

3. Defendant's Assertion of His Right
The Barker court held that in this third factor:

*11 The defendant's assertion of his speedy trial right, then is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
Barker, 407 U.S. at 531-32, 92 S.Ct. 2182. Johnson did not assert his right to a speedy trial until he filed his motion to dismiss in January of 1997. Under these circumstances, the assertion of right factor weighs, at most, only slightly in his favor. McGhee v. State, 657 So.2d 799, 803-04 (Miss.1995).

4. Prejudice to the Defendant
In a delay as long as the one in the case sub judice, the burden again shifts to the State to show that the defense suffered no prejudice by the delay. The United States Supreme Court noted:
Inordinate delay ... seriously interfere with the defendant's liberty, whether he is free on bail or not and ... that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and friends.
United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The method of computation under the 270-day statute is set out in Adams v. State, 583 So.2d 165, 167 (Miss.1991). The date of arraignment is not counted but the date of trial is and weekends are counted unless the 270th day is a Sunday. Furthermore, if good cause is shown for granting a continuance, that time does not count. Reed v. State, 506 So.2d 277, 281 (Miss.1987).
¶ 22. Overall, the amount of time that Johnson spent within Mississippi's jurisdiction for purposes of a speedy trial analysis amounted to approximately seventy days. The Barker factors standing alone are insufficient conditions for determining that there was a deprivation of the right to a speedy trial. Since the length of delay attributable to the State was well within the required 270 day rule and not prejudicial, no further analysis needs to be made. Therefore, we find this assignment of error to be procedurally barred and to be without merit.

CONCLUSION
¶ 23. In the case sub judice, the court wrongly limited Johnson's cross-examination of Williams in order to develop evidence of her bias against himself and his attorney. Furthermore, since the trial court failed to make an on-the-record analysis of the Peterson factors required by Rule 609, we hold that the admission of Johnson's prior conviction was reversible error. Here, legally sufficient evidence existed to find Johnson guilty beyond a reasonable doubt; therefore, we affirm the trial judge's ruling with regard to denying the motion for directed verdict. After reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Johnson's motion for a new trial. Although Johnson points to no authority in support of his claim that he was denied his constitutional right to a speedy trial, a review of the merits of this issue indicates that this assignment of error is without merit. We therefore reverse the decision of the Coahoma County Circuit Court and remand for proceedings consistent with this opinion.
¶ 24. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TAXED TO COAHOMA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.