759 So.2d 479 (2000)
Jason YOUNGBLOOD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01294-COA.
Court of Appeals of Mississippi.
March 14, 2000.
*480 Lewis J. Weeks Jr., Patsy Ann Bush, Hazlehurst, Attorneys for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND PAYNE, JJ.
DIAZ, J., for the Court:
¶ 1. Jason Youngblood appeals the decision of the Copiah County Circuit Court convicting him of armed robbery and conspiracy to commit armed robbery. Youngblood asserts the following issues in his appeal: (1) whether he should be granted a new trial based upon new evidence and (2) whether the evidence presented at trial was sufficient to establish the crimes of armed robbery and conspiracy to commit armed robbery and whether the jury's verdict was against the overwhelming weight of the evidence. Finding both issues to be without merit, we affirm the decision of the trial court.

FACTS
¶ 2. On March 10, 1998, the Three Star Grocery in Hazlehurst was robbed at gunpoint. Jason Youngblood, Cedrick "Duck" Jordan, Minyard "Earbob" Shannon, Brenton "B.J." Morris, and Tyrone Stovall were indicted for armed robbery and conspiracy to commit armed robbery. Jordan, Shannon, and Stovall each pled guilty to these offenses before Youngblood and Morris were tried. Morris was aquitted.
¶ 3. At trial, Stovall testified for the State that Youngblood was present during the robbery and that he agreed to help rob it. Stovall stated that after the robbery all of the defendants met at a nearby house to split up the money. However, Jordan, Shannon, and Morris testified that Youngblood did not participate or help plan the robbery.
¶ 4. Youngblood testified that he was in his aunt's neighborhood when he first saw Shannon on March 10. Apparently, Shannon was outside Kamino Johnson's house waiting for Jordan to return. Shannon and Youngblood talked for a few minutes and then Youngblood left. He did not see Shannon again until he was at the Three Star Grocery alone around ten o'clock that night. After purchasing an item, Youngblood saw Morris and asked for a ride but Morris could not take him since his car was full. As he was walking back to the neighborhood, Jordan called him to the side of the store building. Youngblood stated that Jordan was wearing a bandana as a mask and that he also saw Shannon there with a BB gun at which point he told them they "didn't need to be robbing no store." As he was leaving, Youngblood saw someone who had rubber bands in his hair coming through a path towards the store. After he was arrested with his co-defendants, Youngblood learned that this person was Stovall.
¶ 5. Youngblood claims he never saw Shannon or Jordan go into the store. He stated that he did not see either of them until later when he was sitting on a porch. They both went inside and he assumed *481 they robbed the store and were dividing the money from the sounds they were making. He stated that he never saw any money or its division and was not the recipient of any money or items taken from the store.
¶ 6. At trial, Quentin Bailey testified that Jordan, Shannon, Youngblood, and he went to Adrianna Johnson's house around nine o'clock on the night of the robbery and that Johnson gave Jordan three bandanas. However, on redirect, Bailey testified that before they split up, each had a bandana.
¶ 7. Johnson testified that Bailey, Jordan, Shannon, and Youngblood came to her house and asked for bandanas. She said that she gave two to Jordan and that her sister gave one to Shannon. She testified that the bandanas were returned by Jordan, Shannon, and Youngblood around ten o'clock that night.
¶ 8. Cornelius Sanders testified that B.J. Morris left his house at approximately 9:45 p.m. on March 10, 1998, with Wade Tanner and J.R. Morris. His testimony was corroborated by Bonnie Sanders. Tanner testified that he took Morris to the store that night but that he returned with B.J. Morris as well. He was unsure of the time.
¶ 9. Shannon testified that there was no plan to rob the store. He stated that Youngblood's presence at the store was merely a coincidence and Youngblood in fact attempted to dissuade them from robbing the store. Unsuccessful, Youngblood left the store before the robbery. Shannon testified that Youngblood did not participate in the division of the proceeds of the robbery.
¶ 10. Jordan testified that he and Youngblood never talked about robbing the store nor did they enter into any type of agreement to rob it. Jordan denied instructing Youngblood to be the lookout. Jordan also testified that Youngblood tried to talk him out of robbing the store. He stated that Youngblood left when he realized he had not convinced him not to rob the store. Jordan also testified that Youngblood did not receive any of the proceeds from the robbery. Jordan explained that his prior statement to police which implicated Youngblood as the leader was an attempt to avoid personal incarceration. At trial, he testified that he was telling the truth because he did not want Youngblood to be punished for something he did not do.
¶ 11. Morris testified that he saw Youngblood at the Three Star that night and that Youngblood asked for a ride. He stated that he did not see the other defendants that night. From the Three Star, Morris went to Sanders's house and then to over to Big Mama's house where Youngblood was sitting on the porch. He said that Stovall, Shannon, and Jordan were sitting beside the house near a picnic table. He also stated that, at one point, all five of them were sitting together at a table in Adrianna's house.
¶ 12. The jury returned a verdict of guilty on both counts for Youngblood and acquitted Morris of the same charges. Subsequent post trial motions by Youngblood were denied. After the trial, Stovall filed a motion for post conviction relief in the Copiah County Circuit Court and attached an affidavit in which he recanted his testimony that implicated Youngblood and Morris in the armed robbery and conspiracy. He further stated that he did not see either on of them commit any offense.
¶ 13. Youngblood's motion to the supreme court to supplement his record on appeal with Stovall's motion for post conviction relief was granted.

DISCUSSION

I. WHETHER YOUNGBLOOD SHOULD BE GRANTED A NEW TRIAL BASED UPON NEW EVIDENCE
¶ 14. On appeal, Youngblood presents Stovall's post-conviction relief affidavit that recants testimony which implicated Youngblood in the armed robbery *482 and conspiracy to commit armed robbery. Unfortunately, this information was never presented to the trial judge despite its supplementation to the record on appeal in this case. "A trial judge will not be found in error on a matter not presented to him for decision." Jones v. State, 606 So.2d 1051, 1058 (Miss.1992). Therefore, this issue is procedurally barred on a direct appeal. Although this issue is not properly before us, a motion for post conviction relief brought under the guidelines of Mississippi Code Annotated Section 99-39-7 (Supp.1999) would be appropriate.

II. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE CRIMES OF ARMED ROBBERY AND CONSPIRACY TO COMMIT ARMED ROBBERY AND WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE

A. Sufficiency of the Evidence
¶ 15. A challenge to the sufficiency of the evidence requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss.1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion for a directed verdict or JNOV. Id. If he concludes that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for directed verdict and JNOV; that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989). Of course, the opposite is also true. We may reverse the trial court's ruling only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 16. Though Stovall recanted his testimony in a subsequent motion for post-conviction relief, that evidence was not before the trial judge as discussed above, and we are bound to follow the standard of review set forth for an appellate court. As a result, legally sufficient evidence was presented at trial to find Youngblood guilty beyond a reasonable doubt. The State made out its prima facie case by putting into evidence Stovall's eyewitness testimony which identified Youngblood as one of the participants in the robbery. According to Stovall's testimony, he saw Youngblood at the Three Star when he arrived. Youngblood agreed when Jordan asked if "they were down" which Stovall understood to mean if they wanted to rob the store. Stovall testified that Youngblood acted as lookout, at Jordan's instruction to "post up." After the robbery was completed, they all went to Adrianna's house where they split the money and drank beer. Stovall testified that Youngblood received a portion of the proceeds. Since the State put forth sufficient, credible evidence, the trial judge was required to leave the final decision of guilt or innocence to the jury. We affirm the trial judge's ruling with regard to the motion for a JNOV.

B. Weight of the Evidence
¶ 17. The next motion we will review is that for a new trial. This goes to the weight of the evidence and not its sufficiency. In reviewing this claim, this Court must examine the trial judge's denial of Youngblood's motion for a new trial. Jones v. State, 635 So.2d 884, 887 (Miss. 1994). The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and *483 should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice. May, 460 So.2d at 781. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State, 585 So.2d 693, 695 (Miss.1991). The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Id. Likewise, the reviewing court may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial. Id. Stovall testified that Youngblood agreed to rob the store and to serve as a lookout. "The testimony of a single witness, whose testimony is not unreasonable and whose credibility is not successfully impeached, will sustain a conviction although there may be more than one witness testifying in opposition thereto." Clanton v. State, 279 So.2d 599, 600 (Miss. 1973). Upon reviewing all of the evidence as noted by the facts of this case, even those that conflict, and when presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Youngblood's motion for a new trial. Accordingly, we dismiss this assignment of error as lacking in merit.
¶ 18. THE JUDGMENT OF THE COPIAH COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCED TO SERVE A TERM OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCED TO SERVE A TERM OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCES TO RUN CONCURRENT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO COPIAH COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS WITH SEPARATE WRITTEN OPINION.
IRVING, J., CONCURRING:
¶ 19. I am in agreement with the majority that based on the appropriate application of the standard of appellate review, we cannot consider Stovall's affidavit recanting his trial testimony that Youngblood was involved in the crimes which are the subject of this appeal because that affidavit was not first presented to the trial court. However, I write to simply point out that had this affidavit been presented to the trial court as a part of Youngblood's motion for a new trial, I would have no difficulty concluding that he should be granted a new trial. But, because that was not done, I concur with the majority's affirmance of the guilty verdict.