939 So.2d 826 (2006)
Dennis BRACKEN, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01423-COA.
Court of Appeals of Mississippi.
October 10, 2006.
*827 William C. Bristow, Tupelo, attorney for appellant.
Office of the Attorney General by Jacob Ray, attorney for appellee.
Before KING, C.J., SOUTHWICK, IRVING, and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Dennis Bracken, Jr. was convicted of attempted sexual battery in the Lee County Circuit Court. The trial court sentenced him to serve thirty years, with fifteen suspended, in the custody of the Mississippi Department of Corrections, and *828 the remainder of the sentence to be served under post-release supervision. Bracken appeals and: (1) challenges the sufficiency of the evidence, (2) argues that the verdict was against the overwhelming weight of the evidence, and (3) claims the trial court erred in denying a mistrial due to the exposure of two jurors to extrajudicial comments and actions of witnesses. We find no error and affirm.

FACTS
¶ 2. In April of 2002, Jane[1], a six-year-old girl, told her mother that her bottom hurt and was itchy. Her mother noticed that her daughter's vagina and bottom were red and irritated. Her mother applied medicine to Jane's apparent rash. While doing so, her mother told Jane that the only reason she was touching Jane there was because she needed medicine, but that no one should ever touch her there. Jane stopped her mother and said, "Momma." Her mother asked what was she going to say. Jane replied, "Denny has touched me there." "Denny" is the name Jane used for Bracken.
¶ 3. Jane then told her mother that the last time she was at her aunt's house, her aunt left for a while and left Bracken in charge of Jane. Bracken was eighteen years old. Bracken took her to her aunt's bedroom and told her to undress. He undressed also, lay down on top of her, and pushed down hard, touching his "privacy" to hers. Jane said she cried, told him to stop and that it hurt. Bracken told Jane not to tell. Jane said it had happened several times before. She said no one else had touched her there besides Bracken. Jane said this happened the last time she was at her aunt's house. Her mother determined that this was Easter Sunday, March 31, 2002.
¶ 4. Jane's mother took Jane to her aunt's house. Jane told her aunt she could not come play at her house anymore because Bracken had hurt her. Jane's aunt asked if Bracken hit her. Jane replied, "No," and pointing to her genitals, "He hurt me down there." Jane did not see Bracken again after that.
¶ 5. Jane was taken to a doctor and examined twice. The irritation cleared up within two weeks and never returned. Her mother reported the incident to the Department of Human Services and the police. Jane's mother took Jane to counseling. At counseling, Jane also expressed anxiety she was having over her mother's divorce and her fear of being separated from her stepsisters.
¶ 6. The evidence at trial showed that Jane's account of the event never changed. Her story remained consistent when told to her mother, aunt, counselors, and the jury.

ANALYSIS
I. Was there sufficient evidence to sustain Bracken's conviction?
¶ 7. Bracken argues there was insufficient evidence to support a conviction for attempted sexual battery. The State responds that Jane's symptoms and testimony were sufficient for a reasonable juror to conclude that Bracken had attempted to commit sexual battery.
¶ 8. In reviewing a sufficiency of the evidence claim, the Court considers the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 844(¶ 16) (Miss.2005). Usually, if any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we will uphold the verdict. Id.
*829 ¶ 9. A person is guilty of an attempted crime when he intends and tries to commit a crime, does any overt act toward committing the crime, but he fails or is prevented from committing the crime. Miss. Code Ann. § 97-1-7 (Rev.2000). Sexual battery is "sexual penetration with another person without his or her consent [or with] a child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Miss.Code Ann. § 97-3-95(1)(a) and (d) (Rev.2000). Therefore, to convict Bracken of attempted sexual battery, the State had to prove that Bracken (1) intended to sexually penetrate a child under the age of fourteen, while Bracken was at least two years older than the child, (2) Bracken made an overt act toward committing this offense, and (3) failed or was prevented from doing so.
¶ 10. At the time of the alleged offense, Jane was six years old, and Bracken was eighteen. Jane testified that she and Bracken were both completely undressed. He lay down on top of her and touched his "privacy" to hers. She said he was pushing hard and it hurt. She said his "privacy" was "the thing he pees with." When asked where hers was, she pointed to her genital area. She could not remember if he penetrated her. Her mental health counselor, Carla Davis testified that Jane discussed the abuse, and Jane said that he had "tried" to penetrate her. Jane testified that Bracken told her not to tell anyone or she would not be able to see her cousin anymore. Her mother testified that Jane's skin was red and irritated from the top of her vagina down to her rectum. The jury heard testimony that Jane's story was consistently reported to her mother, aunt, and counselors.
¶ 11. We find there is sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Bracken attempted to commit sexual battery. There was evidence he intended to penetrate Jane's vagina with his penis. This satisfies the definition of sexual penetration. Miss Code Ann. § 97-3-97(a) (Rev.2000). At the time of the incident, Bracken was more than two years older than Jane. The evidence also established an overt act toward committing the crime. Finally, there was evidence that Bracken failed to penetrate her. We affirm the trial court's denial of a directed verdict.
II. Was the verdict against the overwhelming weight of the evidence?
¶ 12. The next issue raised by Bracken is that the verdict is against the overwhelming weight of the evidence. He contends that the State's case only consists of Jane's uncorroborated testimony. The State again points out that the evidence consists of Jane's physical symptoms as well as her testimony.
¶ 13. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶ 18). The evidence is weighed in the light most favorable to the verdict. Id. The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Id. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 14. We have already discussed the State's evidence which supports the verdict. At trial, Bracken denied the allegations. He said all that happened was that they played a video game. Jane's aunt testified that when she came home Jane and Bracken were playing a video game in *830 the living room. Her aunt said Jane did not appear upset. Jane's mother testified as to the red irritated skin around Jane's vagina and rectum. The jury had this to consider as well as Jane's testimony of her attack. The trial court was within its discretion to consider the competency of the then nine-year-old witness. Veal v. State, 585 So.2d 693, 697 (Miss.1991). Moreover, Bracken does not challenge whether Jane was a competent witness or not. We are unable to say that the guilty verdict was so against the overwhelming weight of evidence, where the victim's testimony was corroborated by physical evidence. We affirm.
III. Was Bracken entitled to a mistrial because of extrajudicial comments and actions witnessed by some of the jurors?
¶ 15. Finally, Bracken argues that he was entitled to a mistrial. Specifically, he claims that a juror was exposed to the extrajudicial statements and emotional outbursts of the victim's grandmother and two aunts. He argues this raised the possibility of taint, which entitled him to a mistrial. The State argues that the trial court correctly determined that the juror was able to remain fair and impartial. We agree.
¶ 16. Whether to grant a motion for mistrial is within the sound discretion of the trial court. Caston v. State, 823 So.2d 473, 492(¶ 54) (Miss.2002). The standard of review for denial of a motion for mistrial is abuse of discretion. Id. The Uniform Rules of Circuit and County Court provide:
Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by the party, the party's attorneys, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case.
Upon motion of a party or its own motion, the court may declare a mistrial if [ ] the trial cannot proceed in conformity with law. . . .
URCCC 3.12. The most fundamental and sacred rights secured for the criminal defendant is his right to a trial before a fair and impartial jury. Johnson v. State, 476 So.2d 1195, 1209 (Miss.1985). "Because of this, once the jury is empaneled, all cautionary measures possible should be taken to prevent extraneous or outside influence from reaching the jury in an effort to ensure impartiality and to ensure that the accused receives a fair trial." Williamson v. State, 512 So.2d 868, 882 (Miss.1987) (overruled on other grounds). Outside influences must be eliminated if possible and minimized otherwise or the verdict rendered is questionable and a mistrial is appropriate. Fuselier v. State, 468 So.2d 45, 53 (Miss.1985).
¶ 17. During the trial, Juror Elliott approached the bench and told the trial court that she had overheard witnesses discussing the case in the bathroom. The trial court dismissed the jury with the exception of Juror Elliott. Juror Nickey Carter spoke up, "She asked my opinion, Your Honor. I know about it." The trial court instructed Juror Carter to leave the courtroom and to wait until he was called back.
¶ 18. Juror Elliott told the court that she went to the bathroom and overheard a conversation between Jane's grandmother and two aunts, one of whom had testified. She described an angry outburst and discussion about the case. She said she did not hear anything that she could not set aside. When asked did she relay this information to Juror Carter, Juror Elliott responded, "Yeah. We were sitting in the jury room later, you know, together, and I *831 said, well, you know, I said I didn't really hear anything. Do you think I should say something? And he said, well, it wouldn't hurt." The trial court had Juror Elliott return to the jury room and then called Juror Carter.
¶ 19. The trial court asked Juror Carter to tell exactly what Juror Elliott told him about the bathroom incident. He replied, "She said she went to the bathroom and saw some of them there. I'm not sure if she specified who. And that they were talking. She heard nothing specific. Should I tell somebody? And who? I said yes, I think you need to tell the judge." The trial court dismissed Juror Elliott and had her replaced by the second alternate. The first alternate had already replaced a juror who, halfway through the trial, realized he knew Jane's family. The trial court did not dismiss Juror Carter and denied Bracken's motion for a mistrial.
¶ 20. From this record, we cannot say the trial court abused its discretion by denying the mistrial. From both jurors' testimony it does not appear that Juror Carter knew anything other than Juror Elliott overheard some witnesses talking. He did not know which witnesses nor did he know the substance of the conversation. His only role was to encourage a fellow juror to report an incident which might have affected that juror's impartiality. There is nothing to indicate that Juror Carter was exposed to the outside influence. Accordingly, we find no error and affirm.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF ATTEMPTED SEXUAL BATTERY AND SENTENCE TO SERVE A TERM OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND THAT FIFTEEN (15) YEARS SHALL BE SUSPENDED, AND THE DEFENDANT SHALL BE PLACED UNDER POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] To protect the identity of the victim and her family, we use a fictitious name.