JAMES, J.,
CONCURRING IN PART AND DISSENTING IN PART:
¶ 32. Because I disagree with the majority that uncorroborated hearsay is legally sufficient evidence to support a murder conviction, I respectfully dissent from the majority’s finding that the evidence supporting the murder conviction is legally sufficient. I agree with the majority’s conclusion and analysis as to the jury instructions and the sentencing. I would reverse the murder conviction, find Shaheed guilty *1115 of manslaughter, and remand the case to the trial court for resentencing.
¶ 38. To convict Shaheed of murder, the State had to prove that Shaheed (1) killed Truss (2) “without authority of law” (3) “with deliberate design to effect” Truss’s death. Miss. Code Ann. § 97 — 3—19(l)(a) (Supp. 2016). The evidence at trial was insufficient to show that Shaheed deliberately designed Truss’s death. Shaheed’s indictment for murder, however, served as notice of the lesser-included offense of manslaughter. Id. § 97-3-19(3). To prove manslaughter, the State had to show that Shaheed (1) killed Truss (2) without malice (3) “under the bona fide belief, but without reasonable cause therefor, that it was necessary for him to do so in order to prevent [Truss] from inflicting death or great bodily harm upon him.” Bolton v. State, 87 So.3d 1129, 1133 (¶14) (Miss. Ct. App. 2012); Miss. Code Ann. §§ 97-3-35, -47 (Rev. 2014). Because the evidence is legally sufficient to support a conviction of manslaughter, I would find Shaheed guilty of manslaughter.
¶ 34. The Mississippi Supreme Court, in Busk v. State, 895 So.2d 836, 843 (¶ 16) (Miss. 2005), detailed the appellate courts’ review of a question of the sufficiency of the evidence:
[T]he critical inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to
“ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss. 1985) (citing May v. State, 460 So.2d 778, 781 (Miss. 1984)); However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70.
(Citations omitted).
MURDER
¶ 35. Because there was insufficient evidence presented at trial to support the intent element of murder, the evidence is legally insufficient to support a conviction of murder. At trial, three eyewitnesses testified: Shaheed, Gardner, and Collins. None of the uncontradicted eyewitness testimony demonstrated that Shaheed deliberately designed Truss’s murder or intended to murder Truss. The remaining evidence at the trial is also legally insufficient to support Shaheed’s murder conviction.
¶ 36. Shaheed’s uncontradicted trial testimony demonstrates that he lacked the *1116 intent to murder Truss. On direct examination, Shaheed testified:
Q. And when you looked out the window, what did you see?
A. Truss was standing at the dotor with a pistol in his hand and [he] cocked the gun.
Q. ... [D]id you and [Gardner] decide to do anything? ...
A. Well, she stated that she knew who he was, and I told her, you know, go outside and handle the situation.
[[Image here]]
Q. What happened to make you go downstairs eventually?
A. Well, while I’m in the room, I hear a bunch of yelling coming from a male. And I look out the window, and I can’t — you know, I couldn’t see her or him out of the bedroom window. And I go to living room window, I couldn’t see []either of them, so that’s when I went outside.
[[Image here]]
Q. And at the time that you went down, were you under the impression that [the situation] was being defused?
A. It was actually looking rough when I got down there.
Q. ... [C]an you tell us ... what you mean by that?
A. Well, he was — see, I don’t know what they were arguing about, but he was in her face and screaming and yelling, you know. That’s when I approached and asked him what was going on. ...
Q. You didn’t have any intention of doing anything tó Mr. Truss when you went downstairs, did you?
A. No, sir.
[[Image here]]
Q. Why did you take your gun downstairs instead of walking down without your gun? ■ ■
A. Because I [had] seen [that] he had a gun, and he[ ] [was] also armed with ; a gun.
Q. ’ He had a gun and cocked it?
A. He had a gun and cocked it.
[[Image here]]
Q. And what did you do once you walked up to them?
A. I ... ask[ed] what was going on.
[[Image here]]
A. ... I was like, ‘What’s going on?” [Truss] said, “Ain’t shit going on, my nigga. What’s up[?]” ...
Q. And what happened after that?
A. That’s when I — well, by this time I done met up with him, and he attempted to reach for his pistol.
Q. And what did you do?
A. I grabbed at it.
Q. And you grabbed at it for what reason?
A. To prevent him from coming up with it. I know he loaded it at the door.
[[Image here]]
A. I was really trying to prevent him from coming up and shooting me.
[[Image here]]
Q. ... Were you able to actually grab the gun,’ or the area where he had the gun at?
A. Yes, sir.
Q. And what happened after you grabbed it?
A. Well, he pushed [Gardner] out [of] the way and broke loose, and that’s when I came up and started shooting.
Q. ... And when he broke loose, did he do anything?
*1117 A. Well, he attempted to come up with . his pistol. ' ,
Shaheed also testified on redirect examination that Gardner had taken the only phone in the apartment with her when she confronted Truss.
¶ 37. Based on this testimony, I would find that the evidence is legally insufficient to support' Shaheed’s murder conviction. Shaheed’s testimony shows that Shaheed attempted to avoid the conflict. He sent Gardner out to defuse the situation. He only joined Truss and Gardner outside after he heard a man yelling and was unable to see either of them from the apartment. Plus, Shaheed did not have a readily available means to contact the police as Gardner had taken the phone with her. In addition, Shaheed knew that Truss was armed after Truss had cocked his gun at the apartment door. Because Shaheed testified that he did not know what Gardner and Truss were arguing about, the evidence showed that Shaheed did not engage Truss as a jealous boyfriend with intent to murder. Instead, the record shows that Shaheed approached Truss out of a concern for Gardner’s safety. Further, the record.also shows that Shaheed did not shoot Truss until after he had attempted to prevent Truss from pulling his weapon. Shaheed’s testimony shows that Shaheed did not intend to murder Truss.
¶ 38. Gardner’s testimony supports this conclusion and demonstrates that the evidence is legally insufficient to support Sha-heed’s murder conviction. Gardner testified:
Q. [Wejre you able to [keep Shaheed from answering the door]?
A. Yes, ma’am. He told me to go outside and handle the situation so the guy could leave.
Q. And what did you do then?
A. Before getting to the door, I got nervous because I heard him.
[[Image here]]
A. ... I proceeded to go outside even though I heard Truss cock his gun.
Q. So ... you heard [Truss] cock his gun?
A. Yes ma’am, I did.
[[Image here]]
Q. ... [W]hat was [Truss] doing?
A. He was talking erratic[ly]... Every time I’d tell him to leave, he’d tell me to shut up, just constantly telling me to shut up.
[[Image here]]
Q. Where did [Shaheed] stop?
A. He walked up to where we were at and asked, “Is there a problem? What’s going on? Are you okay?”
[[Image here]]
A. ... Truss went to talking, I didn’t get a chance to respond to Shaheed.
Q. Okay. And then what happened?
A. It was an altercation that occurred.
[[Image here]]
Q. What do you mean by ... altercation?
A. Truss ... was trying to pull his gun and when Shaheed noticed it, he went to tussling with him telling him not to pull his gun on him[.] ... And once Shaheed lost a grip, I was pushed out [of] the way.
[[Image here]]
A. ... I [had] seen [Truss] trying to place his hand over on his gun to pull. He had a shirt on over the gun, but you could see the handle sticking out.
¶39. Viewing Shaheed and Gardner’s uncontradicted testimony together, it is evident that the evidence is legally insufficient to support the murder conviction. The evidence shows that Shaheed chose to avoid conflict with Truss by sending Gard *1118 ner out to defuse the situation. Shaheed testified that he only exited the apartment after he could no longer see Gardner and heard a man yelling outside. Shaheed also testified that he brought his gun with him since he had already seen Truss cock his own weapon. Once again, Shaheed stated that he asked, “What’s going on?” instead of immediately attacking Truss. Shaheed also stated that it was only when Truss appeared to reach for his gun that he struggled with Truss for control of Truss’s weapon before shooting Truss. Thus, the testimony showed that Shaheed did not intend to murder Truss.
¶40. Collins’s testimony largely supports both Shaheed and Gardner’s testimony. Collins stated that when she stepped out of her apartment Shaheed and Truss were already fighting. She testified, “I [had] seen two guys tussling. The next thing I know, the other guy pulled his hand up and the other guy shot him.” Collins stated that Truss did not have a gun, but, according to her testimony, she only saw the two men once the fight had begun. Collins’s testimony does not demonstrate that Shaheed intended to murder Truss.
¶ 41. Beyond the eyewitnesses’ testimony at trial, the testimony of the investigating officers does not demonstrate that Sha-heed intended to murder Truss. Officer Bufkin testified that the weapon recovered from Truss’s body was “locked and loaded, ready to go.” In addition, Bufkin, on cross-examination, noted that the weapon was “stuck down in the front of [Truss’s] pants.” Officer Wells testified similarly that Truss’s weapon was found “in between his legs.” Bufkin and Wells’s testimony does not contradict Shaheed or Gardner’s testimony. Also, the fact that the weapon was found after the fight “in between [Truss’s] legs” reconciles Collins’s testimony that Truss did not have a gun. It also lends credence to the testimony that Shaheed, initially, attempted to gain control of Truss’s weapon. While Officer Ma-gee testified that his investigation revealed that Truss raised his hands and retreated from Shaheed, his testimony was based on Collins’s account. Collins’s testimony did not prove Shaheed’s intent to murder either as she only testified that Truss “pulled his hand up.” Other testimony and evidence was given at trial, but none of the evidence contradicted Shaheed and Gardner’s testimony, which showed that Sha-heed did not intend to murder Truss.
¶42. After the trial, the jury was instructed on murder as follows:
The Defendant, Hamin Shaheed, has been charged in the indictment with the offense of murder. The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that:
1. Hamin Shaheed, on or about September 15, 2013, in the First Judicial District of Hinds County, Mississippi;
2. Did willfully kill the said Trinton Truss, a human being, by shooting said person with a deadly weapon, to-wit a firearm, and with a deliberate design to effect the death of Trinton Truss, and further;
3. That Hamin Shaheed was not acting in necessary self-defense;
then you shall find the Defendant, Ha-min Shaheed, Guilty of Murder.
If the State of Mississippi has failed to prove any one, or more, o[f] the above listed elements of deliberate design murder beyond a reasonable doubt, then you shall find the Defendant not guilty of deliberate design murder, [and] continue your deliberations to determine if the Defendant is guilty of manslaughter.
Here, the evidence failed to show that Shaheed intended to kill Truss. The uncon- *1119 tradicted testimony showed that Shaheed attempted to avoid conflict with Truss. The evidence showed that he heeded Gardner’s warning to not answer the door, sent Gardner out to defuse the situation with Truss, and only left the apartment after he heard yelling and could no longer see Gardner. Shaheed also testified that he did not know what Gardner and Truss were arguing about, evidenced by the fact that he asked what was going on instead of immediately attacking Truss.
¶ 43. Contrary to the majority’s finding that the evidence is legally sufficient due to the testimony of Officer Magee, Magee’s testimony relied on hearsay and is legally insufficient to support Shaheed’s murder conviction. The majority also relies on Officer Dalton’s testimony. Hearsay is defined as “a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.” M.R.E. 801(c).
¶44. The trial court abused its discretion in overruling Shaheed’s hearsay objection to Dalton’s testimony. Birkhead v. State, 57 So.3d 1223, 1231 (¶ 29) (Miss. 2011). After Shaheed’s second hearsay objection to Dalton’s testimony was overruled, Dalton testified, “Shaheed said something to [Truss], and [Truss] was trying to explain to him with both hands in the air. ... And at that time, Shaheed shot [Truss] in the head.” Dalton did not witness the shooting and relied on her investigation and the alleged statements of Gardner to arrive at this account of the shooting. As such, Dalton’s testimony, offered for its truth, was hearsay, and the trial court abused its discretion in admitting it.
¶ 45. While admitted at trial without objection, I would also properly review and disregard Officer’s Magee’s testimony under the plain-error doctrine. Blunt v. State, 55 So.3d 207, 211 (¶ 16) (Miss. Ct. App. 2011). In order to review “under the plain-error doctrine, ... there [must have been] an error in the trial court[,] and that ... error [must have] resulted in a manifest miscarriage of justice.” Id. (quotation omitted).[4] “The plain error rule will only be applied when a defendant’s substantive or fundamental rights are affected.” Flora v. State, 925 So.2d 797, 811 (¶ 42) (Miss. 2006).
¶46. Here, Officer Magee’s testimony was admitted without objection but the testimony itself constitutes hearsay. Bridgeforth v. State, 498 So.2d 796, 800 (Miss. 1986) (“A witness cannot testify to what he knows only by the statements of others.”). There is no dispute that Officer Magee did not witness the shooting. His testimony was a result of his investigation, including interviews with Gardner and Collins. At trial, Magee testified, “During this altercation, my investigation revealed that the victim himself was trying to defuse the situation while raising his hands and being advised that he didn’t want any part of the altercation.”[5] This testimony was based on hearsay.
*1120 ¶ 47. The failure of Shaheed’s counsel to object and the trial court’s admittance of the hearsay testimony affected Shaheed’s fundamental and substantial rights. The testimony is the only evidence that Sha-heed intended to murder Truss. The testimony also affects Shaheed’s fundamental rights. As such, I would disregard this testimony as hearsay that should not have been admitted at trial.
¶ 48. In addition to our analysis regarding Magee and Dalton’s testimony, I further disagree with the majority that the officers’ hearsay testimony is legally sufficient to support Shaheed’s murder conviction. Magee and Dalton’s testimony was the only evidence in the record that supported the element of intent, and, as uncorroborated hearsay evidence, it is legally insufficient to support Shaheed’s conviction.
¶ 49. The majority cites two Mississippi cases concerning unobjected-to hearsay that I find unpersuasive. The supreme court, in Veal v. State, 585 So.2d 693, 697 (Miss. 1991), recognized unobjected-to hearsay testimony as “competent evidence” but specifically noted: “Fortunately, we do not face the question whether the verdict could stand on the [hearsay] testimony of seven-year-old B.A.H. and eleven-year-old B.M.H. alone. Their testimony is corroborated in critical particulars by Veal’s confession. This evidence considered in the aggregate, we cannot say that the Court abused its discretion .... ” Here, the majority incorrectly answered the question of whether the verdict can stand solely on the uncorroborated hearsay testimony of Magee and Dalton. Collins’s testimony that Truss “pulled his hand up” does not support either Magee’s testimony that Truss “rais[ed] his hands” or Dalton’s testimony that Truss had “both hands in the air.” (Emphasis added). There is no other evidence in the record of Shaheed’s intent to murder Truss.
¶50, The supreme court also correctly recognized that unobjected-to hearsay evidence “may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence,” Burns v. State, 438 So.2d 1347, 1350 (Miss. 1983) (emphasis added).[6] In Bums, though, the hearsay evidence was a record from the National Crime Information Center (NCIC) that showed that the vehicle the defendant was driving was stolen. Id. Additionally, the NCIC record before the Bums court was corroborated by other evidence: (1) the defendant testified, “I had an idea .... [t]hat I messed up when I took her car,” and (2) one of the defendant’s closing arguments was predicated on the fact that the vehicle was stolen.[7] Id. at 1349-50, In contrast to the *1121 NCIC record, the hearsay at issue here is uncorroborated testimony by a witness who was not present during the shooting. Here, again, there is no separate evidence to support the element of intent and no evidence to corroborate Magee or Dalton’s testimony.
¶51. While it is the role of jury to “decide ... what weight to give to any particular piece of evidence,” it is not the jury’s role to determine if uncorroborated hearsay evidence is legally - sufficient to support a murder conviction. Brown v. State, 764 So.2d 463, 467 (¶ 9) (Miss. Ct. App. 2000). The State had the burden to satisfy all three elements of the murder charge. Shaheed stipulated to the first element of murder, and there is legally sufficient evidence to support the second element. The record, however, is devoid of any evidence that demonstrates Shaheed’s intent to murder Truss other than the uncorroborated hearsay testimony. Notably, as discussed above, both- Gardner and Collins, the two eyewitnesses whom the officers interviewed, also testified at trial and neither of their accounts supports the officers’ testimony.[8] Thus, the evidence is legally insufficient to show that Shaheed intended to murder Truss.
MANSLAUGHTER
¶ 52. While the evidence is legally insufficient to support the jury’s verdict of murder, that same evidence is legally sufficient to find Shaheed guilty of manslaughter. Wade v. State, 748 So.2d 771, 774 (¶¶ 9-10) (Miss. 1999).
¶ 53, Here, the State’s instruction S-5 explained the elements of manslaughter. During the jury-instructions conference, the judge, with agreement of counsel, amended S-5 to include a reference to self-defense. The judge instructed the jury on manslaughter as follows:
The Court instructs the jury that if you unanimously find that the State has failed to prove all of the elements of the crime of murder, you may then proceed in your deliberations to consider the lesser charge of manslaughter.
However, it is your duty to accept the law given to you by the Court. And if the facts [and] the law warrant a conviction of the crime of murder, then it is you duty to make such finding and not be influenced by your power to find a lesser offense.
This provision is not designed to relieve you from performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge, but does justify a verdict in the lesser crime.
The Court instructs the jury that if a person ldlls another under the actual bona fide belief that such a killing is necessary in order to protect himself from great bodily harm or death, but that such belief is not reasonable under the circumstances, then there’s no malice aforethought and the killing is not murder, but at most is the crime of manslaughter.
Therefore, if you find from the evidence in this case that on September the 15th, 2013[,] the defendant did shoot and *1122 take the life of Trinton Truss acting on his actual bona fide belief that such action was necessary to protect himself from great bodily harm or death at the hands of Trinton Truss, but that such belief by the defendant was not reasonable under the circumstances, then you may find the defendant guilty of the lesser offense of manslaughter.
If, however, you find from the evidence in this case that on or about September the 15th, 2013[,] the defendant did shoot and take the life of Trinton Truss acting on his actual bona fide belief that such action was necessary to protect himself from great bodily harm or death at the hands of Trinton Truss, and you further find that such belief by the defendant was reasonable under the circumstances, then you may find the defendant acted in self-defense, and he is not guilty of the lesser included offense of manslaughter, nor murder.
Thus, the jury was instructed on murder and was also instructed on manslaughter and self-defense.
¶ 54. Because of this instruction and the testimony given at trial, the evidence is legally sufficient to support a conviction of manslaughter. Shaheed stipulated to the fact that he shot and killed Truss, satisfying the first element of manslaughter: killing Truss. Shaheed’s testimony that he did not know what Gardner and Truss were arguing about is legally sufficient evidence to satisfy the second element of manslaughter: without malice. Further, there was legally sufficient evidence satisfying the third element of manslaughter: acting under the unreasonable bona fide belief that self-defense was necessary. Shaheed testified to his belief for the need of self-defense, but Collins claimed that Truss did not have a weapon. Further, Gardner, at one point in her testimony, wavered as to whether she had actually seen Truss’s hand on his weapon at the beginning of the fight. In light of this, the evidence is legally sufficient to support a conviction of manslaughter. I, therefore, respectfully dissent and would find Shaheed guilty of manslaughter.
LEE-, C.J., AND FAIR, J„ JOIN THIS OPINION.

. Mississippi Rule of Evidence 103(f) states, "A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved.” See also M.R.E. 103(f) cmt. (The rule "reflects a policy to administer the law fairly and justly.”). While it is correct, as the majority recognizes, that “[n]o legal rule’ requires a trial judge to exclude hearsay in the absence of an objection," Rule 103(f) enables any court, including this Court, to recognize a plain error that affects a party's substantive or fundamental rights.

. The majority argues that because Shaheed’s attorney cross-examined Magee concerning the hearsay testimony, he elicited the testimony and the testimony cannot be reviewed under the plain-error doctrine. There is a differ *1120 ence, however, in a party eliciting hearsay evidence for the first time and later complaining about it on appeal, and a party cross-examining a witness about testimony that had already been entered into evidence. See Fleming v. State, 604 So.2d 280, 289 (Miss. 1992) (recognizing that the incriminating testimony was “elicited by the defense” where neither side had mentioned the evidence before the defense began its cross-examination). Here, the State introduced the hearsay testimony on direct examination. Shaheed should not be penalized for cross-examining Magee concerning his testimony that had already been introduced into evidence.

. I also note that the Bums court cited Citizens Bank of Hattiesburg v. Miller, 194 Miss. 557, 11 So,2d 457, 459 (1943), which dealt with hearsay evidence that was corroborated, like in Veal and Bums. The Miller court wrote, “[S]uch [hearsay] testimony, when considered in connection with [the witness's] positive [nonhearsay] statement that her purported signature was not genuine, was sufficient ....”

. The Bums Court recognized:
There is no doubt appellant was in possession of a stolen automobile because in closing argument his attorney stated,
*1121 It is in evidence and we don’t dispute it, he has got a conviction for armed robbery, he has got a conviction for burglary and larceny and he was down here in a stolen car.
Appellant's counsel further stated:
Now, I invite the [S]tate to come up here and tell you how it is you are supposed to believe that he knew the stuff was in the trunk, he was in a stolen car.
Bums, 438 So.2d at 1350 (emphasis added).

. From the transcript of Dalton's testimony, it ■ appears that she only interviewed Gardner, not Collins.