CITIZENS BANK OF 'HATTIESBURG *v*. MILLER.

(Division A. Jan. 25, 1943. Suggestion of Error Overruled Feb. 22, 1943.)

[11 So: (2d) 457. No. 35247.]

558

Heidelberg & Roberts, of Hattiesburg, for appellant.

**E. C. Fishel,** of Hattiesburg, for appellee.

**McGehee, J.,** delivered the opinion of the court.

On August 1, 1941, Captain H. I. Humphrey, stationed at Camp Shelby, was carrying a deposit account with the appellant, Citizens Bank of Hattiesburg, Mississippi, and drew a check against such account payable to his wife "Mrs. H. I. Humphrey" for the sum of $100, enclosed the same in a letter and placed it in the mail box provided for the depositing of outgoing mail in his particular regiment, duly addressed to her at Brooklyn, New York, where she was then visiting relatives and friends. Captain Humphrey was then about to go on extended maneuvers in Louisiana, and the proof upon the trial of this case disclosed without objection that shortly prior to August 17, 1941, he learned by letter from his wife that she had not received the check and had not heard from him. In the meantime, on the evening of August 7, 1941, this check was presented to the appellee, L. A. Miller, a local resident, at a place of business where he worked, by a young man in soldier's uniform to be cashed. It was then after banking hours and it was agreed that the soldier would leave the check with the appellee until the following day in order that it might be ascertained whether the check was good at the bank. Before doing so, he endorsed the same in the presence of the appellee in the name of "Mr. Nelson Dudley," the same already bearing the purported endorsement of the payee named therein. On the next morning, the appellee carried the check to the appellant bank, asked the teller there whether or not the same was good, and the teller upon ascertaining that Captain Humphrey had more than $100 to his checking account at

the bank and that his signature to the check was genuine agreed to pay the $100 to the appellee provided he would endorse the same. The appellee endorsed the check accordingly and was paid the sum of $100, which he thereafter delivered to this soldier upon his return to his place of business that evening for the money. The entire transaction was handled insofar as the appellee was concerned purely as an accommodation to the soldier, but which fact becomes immaterial for reasons hereafter stated.

On August 17, 1941, Captain Humphrey, after being advised by letter from his wife that she had not received the check and had not heard from him, wrote the appellant bank to stop payment on the check as he feared "that it has been lost in the mail." Thereafter, Captain Humphrey learned upon receipt of his bank statement after September 1, 1941, that the check had been paid on August 8th, as aforesaid, and that the same did not bear the genuine endorsement of his wife. Then, on September 12th, he advised the appellant bank of such fact, suggesting that his wife's signature had been forged, and requesting that the bank credit his account with the sum of $100 with which it had been charged at the time the bank cashed the check upon the endorsement of appellee. The cashier of the appellant bank thereafter advised the appellee on September 16th that the endorsement of the payee on the check was not genuine and requested that he reimburse the bank for the $100 which had been paid to him upon the theory that he had guaranteed the genuineness of the previous endorsements thereon. This request was declined by the appellee and with the result that on February 4, 1942, the appellant bank instituted suit against him in the county court for the sum of $100 and costs, but it appears that the bank failed to restore the credit to the account of Captain Humphrey until the day following the filing of this suit. After hearing the evidence, a peremptory instruction was granted by that court in favor of the appellant bank, from which an appeal was taken to the circuit court, where the judgment

was reversed on the record and judgment entered in favor of the appellee, as defendant. From that judgment, the bank prosecutes this appeal.

The appellee urges, among other things, as a defense to the suit (1) that the same was prematurely brought since the bank had not repaid Captain Humphrey at the time of the filing of the suit; (2) that the bank failed to meet the burden of proof of showing not only that Mrs. Humphrey had not endorsed the check but that she had not authorized anyone else to endorse her signature thereon; and (3) that the bank is estopped from demanding payment of the appellee for the reason that it failed to notify him of the alleged forgery of the payee's signature thereon until more than thirty days after appellee had endorsed the check and received the $100 from the said bank.

On the first contention, we are of the opinion that the cause of action accrued in favor of the bank as against the appellee as endorser as soon as it learned of the alleged forgery, since its liability to Captain Humphrey had accrued when it charged his account with the $100 without authority from the payee of the check in question, together with its right to reimbursement from the appellee as endorser.

On the second contention, it was shown by the testimony of Captain Humphrey without dispute that the check did not bear the genuine signature of the payee as an endorser, and the proof further discloses without objection or conflict that the payee had not only failed to receive the check through the mail but that she did not know that it had been issued or mailed to her until after it had been paid at the bank. In 20 Am. Jur. 1036, it is stated that: "The fact that evidence which is introduced in a case may be, if objected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection. It is the generally prevailing rule that relevant evidence received without objection

may properly be considered, although it would have been excluded if objection had been made. Such evidence, where admitted without objection, has the force and effect of proper evidence and is to be accorded its natural probative effect as though it were admissible under the established rules of practice. Applying these general principles, most courts hold that hearsay evidence, where admitted without objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence. The hearsay rule is merely an exclusionary principle limiting admissibility of testimony and involves no assertion that hearsay statements are without probative force or that they can furnish no logical basis for conclusions of fact, assuming, of course, they are logically relevant to some issue. Hearsay evidence admitted without objection may be regarded as sufficient to establish a fact in controversy.'' And, in the case of Barlow v. Verrill et al., 88 N. H. 25, 183 A. 857, 104 A. L. R. 1126, it is held that hearsay testimony received without objection may properly be considered by the trier of facts although it would have been excluded if objection had been made. The elaborate annotation on page 1130 of 104 A. L. R. in support of the holding in the case above mentioned discloses that this rule is supported by the overwhelming weight of authority. The best evidence rule required that the bank as plaintiff should have offered the testimony of Mrs. Humphrey by deposition or otherwise, to prove that she had not authorized the endorsement of her signature on the check, but no objection was made to the secondary evidence hereinbefore referred to, and we are therefore of the opinion that in the absence of any evidence to the contrary, the testimony of Captain Humphrey to the effect that his wife had advised that she had not received the check and had not heard from him has sufficient probative value to establish the fact that she had not authorized anyone to endorse her signature on the check in question, and that such testimony, when considered in connection with his posi-

tive statement that her purported signature was not genuine, was sufficient to sustain the peremptory instruction granted by the county court in favor of the bank insofar as this defense in particular is concerned.

On the third contention, we are of the opinion that the defense of estoppel against the bank is not well taken for the reason that it does not affirmatively appear from the record that the appellee was in any manner prejudiced by the delay on the part of the bank in notifying him of the alleged forgery of the signature of the payee since it does not appear that the soldier who represented himself to be Nelson Dudley at the time he endorsed the check in that name remained at Camp Shelby for any particular length of time after he received the $100 from the appellee or that his whereabouts were known to the appellee at any time after that date. Appellee testified that he had seen this soldier before, but that he did not know his name, and he did not claim to have ever seen him again after the occasion in question, if indeed there was a Nelson Dudley. In order for delay to work an estoppel, it must clearly appear that the person relying upon an estoppel has been prejudiced by such delay.

We are therefore of the opinion that the undisputed proof was sufficient to establish the alleged forgery; that while the bank is required at its peril to know the signature of its depositor, it is not required to know the signature of the payee named in a check of its depositor, who is unknown to the bank and with whose signature it is not familiar, and under no duty to become familiar; and that the appellee as endorser, whether for accommodation or for value, guarantees the genuineness of previous endorsements upon a check which he negotiates. Sections 2679, 2685, 2690, 2715, 2722, 2724, Code of 1930; and Williams v. Tishomingo Savings Institution, 57 Miss. 633, where it is said: ''But the rule is well settled that an indorser warrants the genuineness of the prior indorsements on the bill, and also his title to the paper. Should it be ascertained, even after payment of the bill, that

any of the indorsements are forged, the drawee can recover back the amount of the bill from the person to whom he paid it; and so each preceding indorser may recover from the person who indorsed the bill to him.'' Therefore, the circuit court was in error in reversing the judgment of the county court whereby the peremptory instruction had been given in favor of the appellant bank. The judgment of the circuit court will be reversed and the judgment of the county court reinstated.

Reversed and judgment here for the appellant.