# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CT-00962-SCT

*DONALD QUINN a/k/a DONALD RAY QUINN*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2022 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| TRIAL COURT ATTORNEYS: | MAEGEN MARIE MANIS |
| | CHRISTOPHER SCOTT ROUTH |
| | ANDREW JAMES WILLIAMS |
| | JESSICA HEPT BAILEY |
| | KEVIN JERRELL WHITE |
| | JACK BRADLEY McCULLOUCH |
| | ESEOSA GWENDLINE AGHO |
| | SHAUNTE' DENISE WASHINGTON |
| | ROBERT SHULER SMITH |
| | JAMES KURT GUTHRIE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT B. OGLETREE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA BYRD |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 12/12/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    Donald Quinn appeals his sexual battery conviction. The Court of Appeals found that the State failed to sufficiently prove venue and reversed and remanded the case to the trial court. The State filed a petition for writ of certiorari, which we granted. We now address the six issues Quinn raises on appeal: (1) whether the State sufficiently proved venue;  (2) whether Dr. George Schiro's testimony was improperly admitted to authenticate DNA evidence; (3) whether Quinn's indictment was properly amended; (4) whether Carolyn Smith's testimony was improperly admitted; (5) whether the trial court should have granted a mistrial in closing arguments; and (6) whether Smith's memory was improperly refreshed with hearsay documents. Finding the trial court did not err, we reverse the judgment of the Court of Appeals and reinstate and affirm the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

¶2.    Donald Quinn was indicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi, for the sexual battery of his seventeen-year-old niece, Jane[1] which resulted in her pregnancy. Specifically, he was indicted under Mississippi Code Section 97-3-95(2) (Rev. 2014).

*Pretrial Motions*

¶3.    The record reflects pretrial motions by the defense. Initially, the indictment alleged that Quinn committed the crime "on and about" January 31, 2016. The State filed a Motion to Amend the Indictment to change the date of the alleged sexual battery to "on, about and/or between the 1st day of July, 2015 and the 1st day of July, 2016," and to "correct the age of

---

[1] Because the victim was a minor at the time of the allegation, we refer to her as "Jane" to protect her anonymity.

the victim from sixteen (16) years of age to (17) years of age." The trial court granted the State's Motion to Amend the Indictment, but it only allowed the State to change the dates to July 1, 2015, to May 25, 2016, which is the day Jane gave birth to her son.

¶4. Additionally, Jane and her mother became unavailable to testify at trial, so the defense made an ore tenus motion to exclude at trial any and all of their previous statements, arguing the statements were hearsay and would violate the Confrontation Clause of the Sixth Amendment.

¶5. In response, the State agreed to only call Detective Samuel Neal, the lead investigator assigned to the case, to testify about his course of investigation into the matter. The trial court, citing *Montson v. State*, agreed to allow Detective Neal's testimony but ruled that he could only testify as to how he received the complaint and how he responded to the complaint, without going into details. *Montson v. State*, 318 So. 3d 1133, 1142 (Miss. Ct. App. 2020).

### *The Trial*

¶6. At trial, the first witness to testify was Detective Neal of the Jackson Police Department. Detective Neal testified that he was the lead investigator tasked with investigating the allegation of sexual abuse of Jane by Quinn. Detective Neal testified that he learned that a sexual assault occurred sometime in August 2015 on Crawford Street in Jackson, Mississippi. The State then asked Detective Neal if this location was within the First Judicial District of Hinds County, Mississippi. Detective Neal answered in the affirmative, and Quinn did not object.

3

¶7.     According to his testimony, Detective Neal responded to the complaint made against Quinn and learned of Jane's pregnancy. Two days after Jane gave birth, Detective Neal testified that he collected swabs from Jane and her child for DNA paternity tests. Additionally, he collected swabs from Quinn, logged all three swabs into evidence, and submitted the swabs to the state crime lab.

¶8.     Dr. Scott Benton, the medical director for the University of Mississippi Medical Center's Children's Safe Centers of Mississippi, also testified at trial. He treated Jane in February 2016 when she was seventeen years old. Dr. Benton testified that at this time, Jane was about twenty-six weeks pregnant, according to an ultrasound done on February 12. Based on this, he testified that Jane's conception date would have been late August 2015, with an expected delivery date of May 20, 2016.

¶9.     The State also called as a witness Dr. George Schiro, the lab director and technical reviewer at Scales Biological Laboratory in Brandon, Mississippi. As Dr. Schiro began to testify about what DNA is, the defense objected on the grounds that the State was not offering him as an expert witness. The trial court sustained the objection, ruling that if Dr. Schiro had not been designated as an expert witness prior to trial, then he may not give expert testimony under any circumstances. The State responded by informing the court that Dr. Schiro's report had been sent to the defense, and the State went on to lay the foundation to establish Dr. Schiro as an expert witness. When the State asked the trial court to designate Dr. Schiro as an expert witness, Quinn objected "based on the fact that he was not designated as an expert pre-trial," so the defense did not receive proper notice of the designation.

4

¶10. The State argued in response that it did designate Dr. Schiro as an expert witness and put the defense on notice in 2018. The trial court gave the State time to find and produce such designation. The State provided to the court a copy of an email the State sent to the defense in 2018 indicating that DNA paternity results were attached to the email.

¶11. The defense argued, under the Uniform Civil Rules of Circuit and County Court Practice, that this email was not a designation. Rather, it simply attached the DNA test results. The State countered, arguing that Rule 17.2 of the Mississippi Rules of Criminal Procedure should apply, not the Uniform Civil Rules of Circuit and County Court Practice.

¶12. The trial court agreed with the defense that the email with the DNA test results attached and no other information about who would be testifying at trial did not designate Dr. Schiro as an expert witness. Because the State did not provide to the defense any anticipated testimony of Dr. Schiro, the trial court ruled that he could testify about the "results that came forward from the test" but that he could not provide any information to the jury that would help them understand DNA or give any type of definition of DNA.

¶13. Dr. Schiro went on to testify that he received the DNA swabs of Jane, her child, and Quinn from the Jackson Police Department and reviewed the DNA analysis. According to Dr. Schiro and based on DNA testing, Quinn could not be excluded as the biological father of the child. His probability of paternity was 99.999992 percent.

¶14. Carolyn Smith, Quinn's mother, also testified at trial. She confirmed that Quinn's birth date was October 23, 1972. Additionally, she testified that Jane had a child and that Jane was the daughter of Quinn's sister Susie Smith. This proved that Quinn is Jane's uncle.

5

¶15. After Smith's testimony, the State rested its case-in-chief. The defense then moved for a directed verdict, arguing the State failed to sufficiently prove venue, an essential element of its case. Specifically, the defense argued that the State failed to present "sufficient evidence" to go to the jury regarding whether or not the crime occurred in the First Judicial District of Hinds County.

¶16. In support of its motion, the defense asserted, "proof of venue is an essential part of a criminal prosecution" that "the State bears the burden of proving . . . beyond a reasonable doubt." The defense argued that the only mention of venue by the State came from Detective Neal, the lead investigator. Further, the defense argued that the State offered Detective Neal's testimony only to explain the course of his investigation and not "for the truth of the matter asserted."

¶17. In response, the State argued that Detective Neal "testified that he responded to a complaint that occurred in the First Judicial District of Hinds County." The State explained that Detective Neal testified that he first responded to 133 Terrace and then learned, "as a result of his investigation, that the complaint occurred – that the sexual battery occurred on Crawford Street in Jackson, Mississippi." According to the State, Detective Neal's testimony as to the location of the complaint was obtained during the course of his investigation. Importantly, the defense did not object to Detective Neal's testimony regarding the location of the complaint.

¶18. In ruling on the defense's motion, the trial court explained that its responsibility was to determine if, "in fact, there is sufficient evidence for the jury to conclude that this offense

6

occurred and that it occurred in Hinds County." The trial court went on to conclude that the State had presented, through Detective Neal's testimony, sufficient evidence as to where the alleged sexual battery occurred, and it denied the defense's motion for a directed verdict.

¶19. The jury convicted Quinn of sexual battery. The trial court sentenced him to twenty years in the custody of the Mississippi Department of Corrections, with ten of those years suspended and ten years to serve. Quinn filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial, which the trial court denied. Quinn timely appealed.

*The Appeal*

¶20. On appeal, the Court of Appeals held that the State failed to prove venue beyond a reasonable doubt and therefore reversed Quinn's conviction and remanded the case for a new trial. *Quinn v. State*, No. 2022-KA- 00962, 2024 WL 679142, at *1 (Miss. Ct. App. Feb. 20, 2024). Although the Court of Appeals found the issue of venue dispositive, it also discussed whether Smith's memory was improperly refreshed with hearsay documents since this could recur in a new trial. *Id.* at *5. The State filed a petition for writ of certiorari, which we granted.

**DISCUSSION**

I.      *The State sufficiently proved venue.*

¶21. The standard of review for a trial court's denial of a motion for judgment notwithstanding the verdict is de novo as to both the law applied by the trial court and the evidence presented during trial. "The legal sufficiency of the evidence, and not the weight

of the evidence, is tested in a motion for JNOV." ***Johnson v. St. Dominics-Jackson Mem'l Hosp.***, 967 So. 2d 20, 22 (Miss. 2007) (citing ***White v. Yellow Freight Sys., Inc.***, 905 So. 2d 506, 510 (Miss. 2004)). "If there is substantial evidence in support of the verdict, we will affirm the denial of the JNOV." ***Id***. (internal quotation marks omitted) (quoting ***Natchez Elec. Supply Co. v. Johnson***, 968 So. 2d 358, 362 (Miss. 2007)). "Substantial evidence is information of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions." ***Johnson***, 968 So. 2d at 362. The trial court must review the evidence in the light most favorable to the nonmoving party, only looking to the sufficiency of the evidence and not to the weight of it. ***Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara***, 908 So. 2d 716, 726 (Miss. 2005).

¶22.    Quinn argues that the trial court erred by permitting the State to elicit testimony from Detective Neal because it was obtained through testimonial hearsay evidence. Because Detective Neal's testimony as to where the crime occurred was testimonial hearsay, Quinn argues the State did not sufficiently prove venue, an essential element of the crime. We disagree.

¶23.    Article 3, Section 26, of the Mississippi Constitution explains that an accused has the right to trial "by an impartial jury of the county where the offense was committed." ***Rogers v. State***, 95 So. 3d 623, 630 (Miss. 2012) (internal quotation marks omitted) (quoting Miss. Const. art. 3, § 26). Further, this Court has consistently held that "proof of venue is an essential part of criminal prosecution, and the State bears the burden of proving venue beyond a reasonable doubt." ***Id.*** (internal quotation marks omitted) (quoting  ***Hill v. State***,

797 So. 2d 914, 916 (Miss. 2001)). Additionally, because venue is jurisdictional in criminal cases, it may be raised for the first time on appeal. *Gillett v. State*, 56 So. 3d 469, 502 (Miss. 2010). While the burden of proof that lies with the State is to prove venue beyond a reasonable doubt, this standard of proof is before the jury, not the trial judge. *Rogers*, 95 So. 3d at 630.

¶24.    During trial, the State elicited the following testimony from Detective Neal regarding venue:

> Q:    What did you learn as a result of your investigation into these allegations?
>
> A:    I learned that a sexual assault had taken place on Crawford Street in Jackson, Mississippi, which Jackson is in Hinds County.
>
> Q:    Is Jackson in the First Judicial District of Hinds County?
>
> A:    That is correct.

Quinn argues that the State only obtained the element of venue through Detective Neal's testimony above, which he contends to be multilevel hearsay and inadmissible according to the trial court's ruling on a pretrial motion in limine. The defense, however, did not make a contemporaneous hearsay objection to this portion of Detective Neal's testimony.

¶25.    Instead, Quinn raised this issue for the first time in his motion for directed verdict at the close of the State's case-in-chief. At a hearing on that motion, the State argued that Detective Neal's testimony was proper because Quinn made no objection to the testimony at trial. While there was not a transcript of the trial available at this hearing, the trial court stated that she did not recall "a back and forth between the State and the defense as it related

9

to that question," so she ruled in favor of the State.

¶26. The trial judge was correct in her recollection. Quinn did not object to this portion of Detective Neal's testimony. After Detective Neal confirmed to the State that Crawford Street was in the First Judicial District of Hinds County, the State continued this line of questioning without objection. The record clearly reflects that the defense did not object to the two questions the State asked in its effort to establish venue.

¶27. If "timely and specific" objections are not made to "allegedly improper testimony," such objections are considered waived, and they may not be raised on appeal. *Hall v. State*, 691 So. 2d 415, 418 (Miss. 1997) (citing *Singleton v. State*, 518 So. 2d 653 (Miss. 1998)). Here, because Quinn did not make a contemporaneous hearsay objection to Detective Neal's testimony establishing venue, such objection is waived and cannot be considered on appeal. *Id.* (quoting *McQuarter v. State*, 574 So. 2d 685, 687-88 (Miss. 1990)).

¶28. Additionally, Detective Neal's testimony was sufficient to prove venue in this case. To prove venue, the State may use either direct or circumstantial evidence. *Hill*, 797 So. 2d at 916 (citing *Jones v. State*, 606 So. 2d 1051, 1055 (Miss. 1992)). "As long as the evidence is sufficient to lead a reasonable trier of fact to conclude that the crime in the present case occurred at least partly in [Hinds] County, then the evidence of venue is sufficient." *Id.* Further, "unobjected-to hearsay evidence, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting a verdict the same as any other competent evidence." *Veal v. State*, 585 So. 2d 693, 697 (Miss. 1991) (citing *Burns v. State*, 438 So. 2d 1347, 1350 (Miss. 1983)). "[H]earsay evidence, where admitted without

10

objection, may properly be considered and given its natural and logical probative effect, as if it were in law competent evidence." *Burns*, 483 So. 2d at 1350 (alteration in original) (quoting *Citizens Bank of Hattiesburg v. Miller*, 194 Miss. 557, 566, 11 So. 2d 457, 459 (1943)). It may be considered as sufficient evidence to establish any fact in question. *Id.* (quoting *Miller*, 194 Miss. at 566).

¶29. Here, Detective Neal's testimony regarding the location in which the sexual battery took place occurred without any objection from the defense on the basis of hearsay. Therefore, as case law explains, his testimony may be considered as sufficient and competent evidence that a jury may consider in their deliberations. *Id.* Detective Neal explained that he learned, as a result of his investigation into the case, that a "sexual assault had taken place on Crawford Street in Jackson, Mississippi, which Jackson is in Hinds County." He later confirmed that Jackson is in the First Judicial District of Hinds County.

¶30. Also, Detective Neal is a police officer for the city of Jackson in Hinds County, and he has been with the department for thirty years. This testimony combined with Detective Neal's experience in Hinds County is sufficient for any reasonable and fair minded juror to conclude that the crime occurred in the First Judicial District of Hinds County, specifically Crawford Street in Jackson, Mississippi. Therefore, the State did provide sufficient evidence for the jury to establish venue.

¶31. Notably, Quinn offered no evidence establishing venue anywhere else. In *Smith v. State*, this Court found that because the defense offered no contrary evidence as to where the alleged crime occurred, the State's proof of venue in their rebuttal was sufficient to establish

11

venue. ***Smith v. State***, 646 So. 2d 538, 543 (Miss. 1994). Here, the jurors heard direct testimony from Detective Neal in the State's case-in-chief that, as a result of his investigation, he learned that a sexual battery had occurred on Crawford Street in Jackson, Mississippi, which is in the First Judicial District of Hinds County. This testimony is sufficient to establish venue in the minds of reasonable jurors.

¶32.   The Court of Appeals held that there was insufficient proof of venue. Specifically, the Court of Appeals stated:

> Yet the investigator's statements were restrained under a thick cloud of pretrial rulings, restricting what he could and could not discuss based on personal observations. While the investigator was permitted to "testify to what he[] personally observed," the trial court forbade him from testifying to "anything that he was told" by another person. To show the course of his investigation, the detective said he "learned that a sexual assault had taken place on Crawford Street in Jackson, Mississippi, which is in Hinds County." But Detective Neal did not say he personally visited the location or testify there was any physical or circumstantial evidence at that location. No other witness testified regarding venue at all. This bare remark was not competent evidence of venue.

***Quinn***, 2024 WL 679142, at *6 (alteration in original). As explained, we disagree. The issue in this case focuses on whether or not Detective Neal's testimony establishing venue should have been admitted as competent evidence for the jury to consider or if it was multilevel hearsay, as Quinn claims. But Quinn did not make a contemporaneous objection at trial to the portion of Detective Neal's testimony that he is now claiming to be hearsay. Because Quinn failed to object to Detective Neal's testimony establishing venue at trial, such objection is waived and cannot be raised on appeal.

   II.   *The trial court did not admit Dr. Schiro's testimony in error.*

12

¶33. Quinn argues Dr. Schiro's testimony was erroneously admitted at trial because (1) he could not authenticate the DNA report and, (2) he was not a qualified expert. This Court reviews decisions on the admissibility of evidence for abuse of discretion. *Portis v. State*, 245 So. 3d 457, 468 (Miss. 2018) (citing *Carothers v. State*, 152 So. 3d 277, 281 (Miss. 2014)). Reversal due to an evidentiary error is only warranted "if the error affects a substantial right of a party." *Id.* at 468 (citing *Carothers*, 152 So. 3d at 282). "Moreover, [a] trial court's decision will be affirmed on appeal where the right result is reached, even though we may disagree with the reason for that result." *Id.* (alteration in original) (quoting *Carothers*, 152 So. 3d at 282).

### A.     Authentication

¶34. Quinn argues that the trial court erred by admitting Dr. Schiro's testimony regarding the results of the DNA paternity test. Because Dr. Schiro did not perform the tests himself, Quinn argues the test results were not properly authenticated. Specifically, Quinn argues that Dr. Schiro's testimony was "insufficient to establish his bona fides as the technical reviewer," so his Confrontation Clause rights were violated.

¶35. "Under both the United States Constitution and the Mississippi Constitution, an accused has a right to confront and cross-examine the witnesses against him." *Hingle v. State*, 153 So. 3d 659, 662 (Miss. 2014) (citing U.S. Const. amend VI; Miss. Const. art. 3, § 26). The Confrontation Clause bars admission of testimonial hearsay unless the witness is unavailable or the defendant had a prior chance to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "Laboratory reports

13

created to serve as evidence against the accused at trial are testimonial statements covered by the Confrontation Clause." *Hingle*, 153 So. 3d at 662 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310, 129 S. Ct. 257, 174 L. Ed. 2d 314 (2009)). In *Melendez-Diaz*, the Supreme Court of the United States held that sworn certificates of analysis were testimonial, so the certificates were inadmissible unless the analyst who prepared them was unavailable, and the defense had a prior opportunity for cross-examination. *Id.* (citing *Melendez- Diaz*, 557 U.S. at 311). Additionally, in *Bullcoming v. New Mexico*, the Court held that an analyst who was "familiar with the lab's procedures but had not participated in or observed the testing" or signed a certification did not satisfy an individual's right of confrontation. *Hingle*, 153 So. 3d at 662 (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 2712, 180 L. Ed. 2d 610 (2011)).

¶36.    "Applying the rules from *Melendez-Diaz* and *Bullcoming*, we have held that a defendant's right of confrontation is satisfied by the testimony of an analyst who reviewed the report for accuracy and signed it as a technical reviewer." *Hingle*, 153 So. 3d at 662-63 (citing *Grim v. State*, 102 So. 3d 1073, 1081 (Miss. 2012); *Jenkins v. State*, 102 So. 3d 1063, 1069 (Miss. 2012)). We expanded on this in *Grim* when we held that if a technical reviewer had "intimate knowledge" of the underlying analysis and report prepared by the primary analyst and the reviewer was "actively involved in the production of the report,"even if he or she did not perform the tests first hand, then the defendant had the opportunity to confront and cross-examine the analyst at trial. *Grim*, 102 So. 3d at 1081 (quoting *McGowen v. State*, 859 So. 2d 320, 340 (Miss. 2003)). This satisfied the defendant's Sixth Amendment right to

confront the witnesses against him. *Id.*

¶37.    Here, Dr. Schiro gave his credentials at the beginning of his testimony:

Q:    And where are you employed Mr. Schiro?

A:    I'm the Lab Director at Scales Biological Laboratory in Brandon.

Q:    And what do you do there?

A:    As Lab Director, I'm involved in the administrative functions of the lab, kind of, the day to day running of the lab, payroll function, take care of personnel. In addition to that, I also, act as a DNA Technical Leader for the lab and I also function as a DNA Analyst at the lab.

Dr. Schiro testified that he created the document detailing the findings of the DNA test results and that it had not been altered in anyway. Additionally, Dr, Schiro confirmed that he signed the document as the "Technical Reviewer," and he explained the findings of the report. Specifically, he explained the agency case number of the report, how he received the swab samples from the Jackson Police Department, and whose swab samples he received. Further, he elaborated on what swab samples are:

Q:    Okay. What are the swab samples?

A:    Swab samples that we received in this case are what we call referenced DNA samples. Meaning that they are taken from a known individual, as opposed to an evidentiary sample. So in this case, we received swabs from the individuals associated with this particular case.

Dr. Schiro also testified as to what he did with the swab samples:

Q:    Okay. And what did you do with those swab samples?

A:    With those swab samples, we run them through a process to where we can extract the DNA from them, quantify DNA from them, amplify the sites of interests of those genetic markers that we are interested in and then analyze those sites to see if we can come up with a DNA profile

15

from those items.

Dr. Schiro further explained that the lab tested sixteen genetic markers for Jane. The report indicated her child's DNA profile and Quinn's DNA profile. Dr. Schiro testified that he and the lab calculated a paternity index based on the DNA profiles, and the result of this paternity index indicated that the probability that Quinn is the father of Jane's child was 99.999992 percent. Based on Dr. Schiro's testimony, it is apparent that he had "intimate knowledge" of the report and was actively involved in its production as a technical reviewer. *Grim*, 102 So. 3d at 1081.

¶38.    Accordingly, Quinn's confrontation rights were not violated when Dr. Schiro testified as to the contents of the DNA paternity test report, and the trial court properly admitted his testimony.

### B.    Qualification

¶39.    Quinn further argues, for the first time on appeal, that Dr. Schiro's testimony should have been excluded from trial because "there was no proper qualification of the witness." Quinn contends that the trial court failed to "test the reliability and methodology of the testing used to complete the results."

¶40.    This Court does not consider issues raised for the first time on appeal. *Anderson v. LaVere*, 136 So. 3d 404, 410 (Miss. 2014). "Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Chantey Music Publ'g Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (Miss. 2005) (citing *Parker v. Miss. Game & Fish*

***Comm'n***, 555 So. 2d 725, 730 (Miss. 1989)).

¶41.    Notwithstanding the procedural bar, Quinn's argument fails. Objecting only to the testimony a witness provides but not his qualifications as an expert does not merit his disqualification. ***Baine v. State***, 604 So. 2d 249, 255 (Miss. 1992). This Court has refused to disqualify a witness if the objection to their qualifications was not properly preserved at trial. ***Baine***, 604 So. 2d at 255 (quoting ***Hosford v. State***, 560 So. 2d 163, 168 (Miss. 1990)).

¶42.    Here, the trial court refused to accept Dr. Schiro as an expert witness at trial due to a discovery violation. The trial court limited his testimony to what was contained in the DNA report. Importantly though, Quinn never challenged Dr. Schiro's qualifications under Mississippi Rule of Evidence 702. Rather, he only challenged the admissibility of Dr. Schiro's testimony based on the fact that the State failed to properly disclose him as an expert witness before trial. Thus, Quinn's challenge concerned a discovery violation, not a violation of qualification under Rule 702.

¶43.    Failing to object to a witness's qualifications at trial pursuant to Mississippi Rule of Evidence 702 bars such issue on appeal. *See* ***Branch v. State***, 998 So. 2d 411, 414 (Miss 2008) (" In the court below, Branch failed to object to Irving's testimony pursuant to Rule 701 or Rule 702 of the Mississippi Rules of Evidence. Therefore, Branch waived his right to appeal this issue." (citing ***Haddox v. State***, 636 So. 2d 1229, 1240 (Miss. 1994))). Because Quinn failed to object to Dr. Schiro's qualifications at trial, the issue is waived on appeal.

    III.    *Quinn's indictment was properly amended.*

¶44.    Quinn argues the trial court erred by granting the State's motion to amend the

indictment because "doing so materially altered the facts of the case and the defenses available to Quinn." Determining whether a trial court erred by amending an indictment is a question of law that is reviewed de novo. *Ferguson v. State*, 136 So. 3d 421, 423 (Miss. 2014) (citing *Jackson v. State*, 943 So. 2d 746, 749 (Miss. Ct. App. 2006)).

¶45. The State may only amend indictments "if the amendment does not change the facts which are the essence of the offense, or materially alter a defense of the defendant so that it results in prejudice to the case." *Jones v. State*, 912 So. 2d 973, 976 (Miss. 2005) (citing *Griffin v. State*, 584 So. 2d 1274, 1275-76 (Miss. 1991)). We have previously held that "courts may amend indictments only to correct defects of form and that defects of substance must be corrected by the grand jury." *Id.* (citing *Rhymes v. State*, 638 So. 2d 1270, 1275 (Miss. 1994)). A form amendment occurs when the amendment is "immaterial to the merits of the case and the defense will not be prejudiced by the amendment." *Id.* (citing *Pool v. State*, 764 So. 2d 440, 443 (Miss. 2000)). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." *Id.* (internal quotation marks omitted) (quoting *Pool*, 764 So. 2d at 443).

¶46. Here, the initial indictment alleged Quinn committed the sexual battery "on and about" January 31, 2016. The State made a motion to amend the indictment to change the date of the alleged sexual battery to "on, about and/or between the 1st day of July, 2015 and the 1st day of July, 2016," and to "correct the age of the victim from sixteen (16) years of age to (17) years of age." The trial court did not allow the State to amend the indictment to its

18

suggested dates, but instead, it allowed the State to amend the dates to July 1, 2015, through May 25, 2016, which is the date that Jane gave birth to her child.

¶47.    Jane's eighteenth birthday was June 20, 2016. Quinn argues the State's proposed amendment prejudiced his defense of age because Jane would have been over the age of eighteen for eleven days under the proposed amended dates. He argues that his conduct would not have violated the statute if committed at a time when the victim was eighteen years old.

¶48.    In the dates that the trial court allowed, however, Jane was at no point eighteen. The jury instruction provided to the jurors instructed that to convict Quinn, it must find that he committed the sexual battery between July 1, 2015, and May 25, 2016. Because the jury instructions do not include any time period in which Jane would have been over the age of eighteen, the amendment was one of form, and his defenses were not prejudiced. During Quinn's hearing for his judgment notwithstanding the verdict, the defense even conceded that the change in dates did not affect Jane's age at the time of the offense:

> Q:    So as it relates to this first issue, is it still your contention that this is the improper statute? You said, she would have been eighteen with the changing of the time period. Based off of my calculation, unless I have calculated improperly and I can stand to be corrected, it seems that she would have still been seventeen years of age.
>
> A:    You're correct, Your Honor.

The amendment to the indictment was one of form, not substance; therefore, the amendment allowed by the trial court did not materially alter or prejudice any defense available to Quinn.

> IV.    *Carolyn Smith's testimony was properly admitted.*

¶49.   Quinn argues the trial court erred by reversing its previous ruling excluding the testimony of Smith, Quinn's mother because the State failed to identify Smith as a witness until "the end of the trial," thereby ambushing the defense. Quinn suggests that through this ambush, the State gained an unfair advantage by not allowing the defense time to discuss "implications of the testimony and develop a trial or defense strategy."

¶50.   On appeal, we review a trial court's discovery ruling under an abuse-of-discretion standard, with reversal warranted only in situations of manifest injustice. ***Blakeney v. State***, 236 So. 3d 11, 22 (Miss. 2017) (citing ***Fulks v. State***, 18 So. 3d 803, 804-05 (Miss. 2009)).

¶51.   Rule 17.2 of the Mississippi Rules of Criminal Procedure provides that the prosecution must disclose to the defense the "names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement . . . of each such witness and the substance of any oral statement made by any such witness[.]" Miss. R. Crim. P. 17.2(1). Under Rule 17.9, if a discovery violation is brought to the attention of the court prior to trial, "the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other orders as it deems just under the circumstances." Miss. R. Crim. P. 17.9(a). If the discovery violation occurs during the course of trial and the defense objects to the introduction, the court must grant the defense an opportunity to interview the newly discovered witness. Miss. R. Crim. P. 17.9(b)(1). If after given this opportunity, the defense "claims unfair surprise or undue prejudice and seeks a continuance or mistrial," the court must either grant a continuance, grant a mistrial, or exclude the evidence. Miss. R. Crim. P.

17.9(b)(2).

¶52.    Quinn argues that Smith's testimony should have been excluded because she was not presented to the defense as a witness until the end of trial. The record reflects, however, that Smith's testimony was the subject of the defense's ore tenus motion prior to trial. In the defense's pretrial motion hearing, the State mentioned its intention to call Smith to prove Quinn's birth date and his familial relationship to Jane. The State explained that as soon as it became aware that Jane and her mother would not testify at trial, it subpoenaed Smith. The State realized during the ore tenus motion, however, that no notice of the subpoena had been given to the defense. Initially, the trial court excluded Smith's testimony, but the State later asked the court to reconsider. In reconsidering the motion, the trial court allowed the State to call Smith as a witness, but it limited her testimony to just the birth dates of her children and to establish familial relationships.

¶53.    "In the context of discovery violations, exclusion of the evidence is a radical sanction that should rarely be used." *Williams v. State*, 54 So. 3d 212, 215 (Miss. 2011) (citing *Houston v. State*, 531 So. 2d 598, 612 (Miss. 1988)). In *Darby v. State*, we established an exception to this general rule: "If the trial court determined that the defendant's discovery violation is 'willful and motivated by a desire to obtain a tactical advantage,' the newly discovered evidence or witnesses may be excluded." *Williams*, 54 So. 3d at 215 (citing *Darby v. State*, 538 So. 2d 1168, 1176 (Miss. 1989)).

¶54.    Here, the trial court did not find that the State committed a willful discovery violation to obtain a tactical advantage. We agree. The State found out soon before trial that Jane and

21

her mother were not going to testify at trial. To establish familial relationships, the State asked Smith if she would be willing to testify. Because Smith did not agree to testify as a witness for the State, the State subpoenaed her shortly before trial was set to begin. The State had the subpoena attested to and entered on June 30, which was five days before trial. By mistake, the subpoena was not properly filed in the clerk's office, so the defense did not receive notice. This was not a willful discovery violation to gain a tactical advantage.

¶55. Additionally, because of the nature Smith's testimony, the defense was not ambushed. The trial court limited her testimony only to the birth dates of her children to establish a familial relationship between Jane and Quinn. This testimony did not create a "manifest injustice" to the defense, and the trial court did not abuse its discretion by allowing Smith's testimony.

> V. *The trial court did not err by not granting a mistrial sua sponte during closing arguments.*

¶56. Quinn argues that the State made prejudicial statements during closing arguments, warranting a mistrial. Quinn maintains that the State alluded to facts not in evidence, specifically Jane's statements to the police.

¶57. The standard of review we must apply to "lawyer misconduct during opening statements or closing arguments is whether the *natural and probable effect* of the *improper argument* is to *create unjust prejudice against the accused* so as *to result in a decision influenced by the prejudice so created*." ***Dora v. State***, 986 So. 2d 917, 921 (Miss. 2008) (citing ***Sheppard v. State***, 777 So. 2d 659, 661 (Miss. 1995)). Additionally, whether to grant a mistrial is within the sound discretion of the trial court. ***Id.***

22

¶58.    During the State's closing argument, the prosecutor made the following statement:

> You guys heard testimony from Dr. Benton, with the Children's State's Center, who told you what the date of birth was for [Jane] so we know that she was under eighteen years old. But he also told you that she was – that the expected date of the conception was in August – the date of conception that they believed, was in August of 2015; based on the fact that she gave birth in May of 2016, which corroborates the statement given by [Jane,] that it was in August –

The defense then objected on Confrontation Clause grounds because Jane did not make any statements at trial, so the State was referencing facts that were not in evidence. In response, the State told the court that it would reword its statement to reflect what Detective Neal said in his testimony regarding the conception date and birth date of Jane's child. The trial court sustained the objection, ruling:

> The victim herself is not here to testify. As such, there should be no mention about her statements or anything of that nature. You certainly can testify about what came out on the witness stand. So, I am going to admonish the jury to disregard that last statement.

The trial court then instructed the jury to "please disregard the statement about what [Jane] would have said. She did not testify. Disregard that statement." Quinn argues that further "curative instruction" should have been given to the jury and that Quinn's counsel's objection was "not enough to cure the inflammatory and prejudicial nature of the State's allusion." He contends that the trial court should have issued a mistrial sua sponte, and it was "plain error" for it not to do so. We disagree.

¶59.    "'[M]istrials should only be declared *sua sponte*' when manifestly necessary." *Stevenson v. State*, 320 So. 3d 1225, 1230 (Miss. 2021) (alteration in original) (quoting *Younger v. State*, 931 So. 2d 1289, 1291 (Miss. 2006)). A trial judge has broad discretion

23

in determining whether to declare a mistrial. *Id.* (citing *Smith v. State*, 925 So. 2d 825, 833 (Miss. 2006)). Further, we have held that the trial judge is "best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial to merit a mistrial." *Ford v. State*, 206 So. 3d 486, 491 (Miss. 2016) (quoting *Flora v. State*, 925 So. 3d 797, 804 (Miss. 2006)). "Unless 'serious and irreparable damage' results from an improper comment, the judge should 'admonish the jury then and there to disregard the improper comment.'" *Id.* (quoting *Flora*, 925 So. 3d at 804). Considerable deference is given to the trial court's decision, but each case "must stand on its own facts in order to determine whether a particular decision constitutes reversible error." *Id.* (quoting *Flora*, 925 So. 3d at 804).

¶60.    Here, the trial court acted in accordance with our precedent. It sustained the defense's objection and admonished the jury "then and there" to disregard the comment the State made in reference to facts not in evidence. *Id.* (quoting *Flora*, 925 So. 3d at 804). The trial court did not have a duty to grant a mistrial sua sponte here because it found that the State's comment did not create "serious and irreparable damage." *Id.* (quoting *Flora*, 925 So. 3d at 804). Further, Quinn did not ask the trial court to grant a mistrial. Because the trial court properly sustained the objection and admonished the jury to disregard the comment, it did not commit error.

> VI.    *The trial court did not err by allowing the State to use birth certificates to refresh Smith's memory.*

¶61.    Quinn argues that the trial court erred when it allowed the State to use birth certificates not admitted into evidence to refresh Smith's memory during her testimony.

Specifically, he maintains that by permitting the State to refresh Smith's memory with the birth certificates for "the sole purpose of establishing a family relationship . . . constitutes ambush, a discovery violation, and admission of improper evidence affecting [his] substantial right."

¶62. In reviewing a trial court's admission or exclusion of evidence, we use an abuse of discretion standard. *Murray v. Gray*, 322 So. 3d 451, 457 (Miss. 2021) (quoting *Hartel v. Pruett*, 998 So. 2d 979, 984 (Miss. 2008)).

¶63. The Court of Appeals addressed this issue in its opinion, finding the trial court did not abuse its discretion by allowing Smith's memory to be refreshed with the birth certificates. *Quinn*, 2024 WL 679142, at *17. Specifically, the Court of Appeals held:

> Mississippi Rule of Evidence 612(a) "allows the questioning attorney to use *any* document or other item to try to jog or refresh the witness's memory or recollection." [*Murray*, 322 So. 3d] at 466 (emphasis added). The Rule itself then places no limitation on what items may be used to refresh the memory of a witness. Notably, "[a] document used to refresh a witness's recollection need not be admissible under the Mississippi Rules of Evidence." *Ervin v. State*, 136 So. 3d 1053, 1059 (Miss. 2014).

*Quinn*, 2024 WL 679142, at *17 (second alteration in original). Therefore, the Court of Appeals found that "it was not an abuse of discretion for the trial court to allow the witness's memory to be refreshed by the birth certificates, even though they were not admitted into evidence." *Id.* We agree.

## CONCLUSION

¶64. Because we find the trial court did not err, the Court of Appeals' judgment is reversed, and the judgment of the Hinds County Circuit Court is reinstated and affirmed.

25

¶65. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶66. Respectfully, I dissent. I agree with the eight of our ten Court of Appeals judges who identified grounds for reversing this conviction and remanding for a new trial.

## I.  Venue

¶67. First, "failure to prove venue necessarily results in a reversal of a cause." *Sandifer v. State*, 136 Miss. 836, 101 So. 862, 862 (1924). Venue must be proved beyond a reasonable doubt. *Hill v. State*, 797 So. 2d 914, 916 (Miss. 2001) (quoting *Crum v. State*, 216 Miss. 780, 63 So. 2d 242, 244 (1953)). Because venue is jurisdictional in criminal cases, it "may be raised for the first time on appeal." *Rogers v. State*, 95 So. 3d 623, 630 (Miss. 2012) (citing *Gillett v. State*, 56 So. 3d 469, 502 (Miss. 2010)). Venue can be established by a victim's testimony of where the crime occurred or by another witness's testimony of being physically present at the location of the crime. *See Smith v. State*, 646 So. 2d 538, 543 (Miss. 1994); *Hensley v. State*, 912 So. 2d 1083 (Miss. Ct. App. 2005).

¶68. Here, given the victim's unavailability to testify at trial, the trial court placed strict limitations on the lead investigator's testimony. The transcript reflects:

> THE COURT: Counselor, I don't know what's going to come out on the stand, but what I will say is that the Investigator will not be able to testify to anything that he was told. The only thing that he would be able to testify about, as it relates to the allegations in this case, is what he observed and he didn't

observe. I'm sure he wasn't there when these acts occurred; was he?

BY [ATTORNEY]: No, ma'am.

THE COURT: Okay.

. . . .

THE COURT: No, sir. Listen to me carefully. He can talk about what the complaint is, but he can't talk about anything that was told to him about the complaint.

. . . .

BY [ATTORNEY]: Yes, ma'am. And then upon the scene, he can say he learned, as a result of his investigation –

THE COURT: -- no, sir –

. . . .

THE COURT: What you're trying to do is tiptoe around the Confrontation Clause.

BY [ATTORNEY]: We're trying to stay within the perimeters set by the Supreme Court.

THE COURT: You're trying to tiptoe around it and I'm telling you, right now, that you're going to be walking on very thin ice for a mistrial.

BY [ATTORNEY]: We understand, Your Honor.

THE COURT: So at the end of the day, Counselor, I'm going to allow you to make your record, but, let's be clear, the Investigator is going to be very limited in his testimony.

BY [ATTORNEY]: Yes, Your Honor.

THE COURT: Very limited.

BY [ATTORNEY]: We do understand.

27

THE COURT: He can't talk about what anybody said to him. He was called out, based off a complaint. He can talk about what he did as a result of the complaint, but he can't go into details and that's what, certainly, you would want to come out, the details.

¶69. During trial, the defense objected again, arguing that the lead investigator's testimony about the result of his investigation was veering into hearsay. The court overruled the objection to the "extent that the officer, certainly, can testify to what his investigation revealed about the case . . . until I hear how he's going to express what he learned, I'm going to overrule the objection." The officer's testimony then proceeded:

| [QUESTION] | What did you learn as a result of your investigation into these allegations? |
| [ANSWER] | I learned that a sexual assault had taken place in Crawford Street in Jackson, Mississippi, which Jackson is in Hinds County. |
| [QUESTION] | Is Jackson in the First Judicial District of Hinds County? |
| [ANSWER] | That is correct. |

¶70. The State's burden to prove each element beyond a reasonable doubt remains unaltered in the face of an unavailable witnesses. I agree with the Court of Appeals analysis regarding the lead investigator's testimony:

[T]he investigator's statements were restrained under a thick cloud of pretrial rulings, restricting what he could and could not discuss based on personal observations. While the investigator was permitted to "testify to what he[] personally observed," the trial court forbade him from testifying to "anything that he was told" by another person. To show the course of his investigation, the detective said he "learned that a sexual assault had taken place on Crawford Street in Jackson, Mississippi, which Jackson is in Hinds County." But Detective Neal did not say he personally visited the location or testify there was any physical or circumstantial evidence present at that location. No other witness testified regarding venue at all. This bare remark was not

28

competent evidence of venue.

*Quinn v. State*, No. 2022-KA-00962, 2024 WL 679142, at *6 (Miss. Ct. App. Feb. 20, 2024) (second alteration in original). The record does not reveal where this evidence of venue came from. It was conceded by the State at trial that it could have very well come from the victim. The trial court had prohibited the admission of any statements made by the victim and had prohibited the lead investigator from testifying to anything that he was told by someone else.

¶71. The Mississippi Constitution guarantees an accused the right to trial "by an impartial jury of the county where the offense was committed." Miss. Const. art. 3, § 26. It is not the role of an appellate court to compensate for the absence of witness testimony by undermining the beyond-a-reasonable-doubt standard. Our job is to preserve strictly the rigorous enforcement of this highest burden of proof. The majority errs by construing the testimony of the lead investigator's testimony to be sufficient to establish venue. I would find that the majority ruling of the Court of Appeals was correct.

## II. Failure to Designate Expert Witness

¶72. I find fault also in the admission of Dr. George Schiro's DNA testimony despite his not having been disclosed pretrial as an expert witness. I agree with the Court of Appeals discussion in *Bailey v. State*, 956 So. 2d 1016, 1029 (Miss. Ct. App. 2007), that "[u]ndoubtedly, DNA comparison testing requires specialized knowledge, skill, experience, training and education." The trial court erred by permitting Schiro to testify regarding the results of the DNA test. I agree that this deficiency cannot be harmless error given that "the

29

testimony Schiro gave is the only proof in the record that Quinn engaged in the 'sexual penetration' of his niece." ***Quinn v. State***, No. 2022-KA-00962, 2024 WL 679142, at *69 (Emfinger, J., concurring in result only). The State seems to have recognized this as problematic as well given its attempt to tender Dr. Schiro as an expert at despite the State's failure to disclose him pretrial. *See* MRE 702.

**CONCLUSION**

¶73.    The State failed to establish proof of venue beyond a reasonable doubt. Therefore, reversal is required. I would find that our Court of Appeals was correct to remand this case for a new trial on this ground. I also would find that the State presented expert testimony without properly establishing Dr. Schiro as an expert witness. Therefore, I respectfully dissent.

**KING, P.J., JOINS THIS OPINION.**